OPINION OF THE COURT
James A. Gowan, J.
On August 12, 1978, Christopher Billsborrow was an employee of Welmetco, Ltd. (Welmetco), and while in the course of his employment cleaning a degreasing tank using Neu-Tri solvent (Neu-Tri) inhaled or was otherwise exposed to the vapors (trichloroethylene), received fatal injuries therefrom, and died. Moreover, for the purposes of this order, there appears to be no dispute that the Neu-Tri being used had been *490 manufactured by Dow Chemical, U.S.A. (Dow); that Dow, in turn, sold the same to Pride Solvent Chemical Company, Inc. (Pride); and that Pride, in turn, sold to Welmetco and EasternSalkover Metal Processing Corp. (Eastern). It appears further that Eastern and Welmetco occupied premises at 70 Marcus Drive, Melville, New York, and although there is no question that the decedent was the employee of Welmetco, the degreaser tank and the solvent tank were located on the portion of the Marcus Drive premises occupied by Eastern.
When he died, the decedent was survived by his wife, Nancy Ann Billsborrow, who, upon appointment as administratrix, commenced the present action in which she, individually and as administratrix, has asserted various claims in negligence and strict products liability against Dow, Pride, Mine Safety Appliances Company (Mine), Hamler Industries, Inc. (Hamler), and Eastern. While of course no action could have been commenced against Welmetco, Dow, Pride and Eastern have each asserted third-party claims against Welmetco.
The presence of Mine and Hamler in the suit is posited simply as follows: Mine was the manufacturer of gas masks and appurtenant equipment which was distributed and sold by Hamler to Welmetco.
Issue having been joined and extensive discovery having been completed:
Dow now seeks summary judgment dismissing the claims as against it (simply stated, Dow failed to provide any and/or adequate warnings to the ultimate consumers or users regarding Neu-Tri), asserting that:
"dow sold neu-tri 'in bulk’ to pride, affixed warning labels to all bulk shipments as well as providing pride with extensive safety literature, labels, and warnings regarding the use, handling and application of neu-tri;
"pride was obligated to furnish all warnings and literature received from dow to its customers;
"By virtue of the sales 'in bulk’, the material disseminated therewith to pride and the extensive knowledge of pride, through its employees and agents, of the dangerous properties of neu-tri, pride is properly cast in the role of a 'responsible intermediary’;
"No sales were made by dow directly to welmetco;
"Upon deposition, there is no material question of fact existing that henry Medina (President of eastern and welmetco) and george Medina (Vice-President and Manager of *491 Eastern and Welmetco), both well knew of the hazards of the vapors of trichloroethylene and, therefore, both eastern and welmetco were 'knowledgeable users’ and, therefore, based upon the foregoing, now thereby satisfied its duty to warn and the question of adequacy of the warnings and, accordingly, under the circumstances of this case, is exculpated from any liability as a matter of law.”
Simultaneously, Pride also seeks summary judgment, dismissing the complaint as against it, borrowing that since:
"Material Safety Data Sheets and warning labels were delivered to welmetco;
"The depositions of henry Medina and george Medina demonstrated that without question, they were knowledgeable as to the dangers of the use of neu-tri and trichloroethylene vapors, the appropriate care and caution to be utilized as to the use of safety equipment, additional personnel, and ventilation, the issue of the scope (including both duty to and adequacy of) of any warning given by i*ride or any employee or agent thereof, cannot be a material issue in this case and, even if it were an issue, under the circumstances of this case, the inadequacy of such warnings (assuming that there would be such a finding) could not be a substantial link in the causative chain of events leading to the death of Christopher BILLSBORROW.”
Initially, Dow seeks summary judgment dismissing the complaint, asserting that it fulfilled its duty to warn Christopher Billsborrow. That duty may be stated as the duty to warn a user of the potential hazards in the use of its product (see, Lancaster Silo & Block Co. v Northern Propane Gas Co., 75 AD2d 55, 65; see also, Voss v Black & Decker Mfg. Co., 59 NY2d 102, 107). Dow asserts, in support of the motion, that it discharged that duty to warn Christopher Billsborrow by application of the doctrine of responsible intermediary (also called informed or learned intermediary) to Pride and transmittal of adequate warnings to Pride. This doctrine provides that in negligence and/or strict products liability actions involving a failure to warn by a manufacturer, a manufacturer may be discharged of its duty to warn an ultimate consumer of the risks of the product when there exists an intermediary in the distribution chain who is knowledgeable of and acquainted with the dangerous propensities of the product and is capable of passing the knowledge on to that ultimate consumer. (Wolfgruber v Upjohn Co., 72 AD2d 59, *492 affd 52 NY2d 768.) Dow asserts that it provided Pride with adequate warning of the risks involved with Neu-Tri and trichloroethylene vapors; that Pride was a responsible intermediary, and, therefore, Dow could rely on Pride to provide the ultimate consumer with adequate warning of the risks of the product, thereby exculpating Dow from any liability to Billsborrow as a matter of law.
The doctrine of responsible intermediary requires both the existence of a learned intermediary in the chain of distribution and establishment that the manufacturer has provided an adequate warning to that intermediary (Hall v Ashland Oil Co., 625 F Supp 1515, 1520).
It appears that New York only adopted the doctrine of responsible intermediary in cases involving drug manufacturers where the ultimate consumer received the drugs from a prescribing physician, it being found that the physician had been provided with adequate warning of the risks of the drug by virtue of a warning inserted in the drug package as well as adequate information having been published in the Physicians’ Desk Reference of the nature of the risks associated with the drug. (Wolfgruber v Upjohn Co., supra; cf, Bikowicz v Nedco Pharmacy, 130 AD2d 89.)
The doctrine of responsible intermediary should not be applied to the facts of this case for the reason that there appears to be several significant distinctions between the case of the physician, as in Wolfgruber (supra), and Pride, as in this case, which warrant such limitation. The primary function of the doctor in the selection and prescription of a particular drug is to promote the health of the user, his immediate patient, while the function of the intermediary in the sale or use of bulk chemicals is to formulate and/or market the product, taking into consideration use by the ultimate consumer (Hall v Ashland Oil Co., supra, at 1519). Also, the doctor is an expert on health risks, while the chemical company’s expertise may only be with respect to the industrial uses and disadvantages of the chemical, and not necessarily with regard to the health risks (supra). Moreover, the relationship of a doctor to his patient is one-on-one, while an intermediary distributes its product to a large number of unknown consumers (Khan v Velsicol Chem. Corp., 711 SW2d 310, 313 [Tex]).
Even were this court to accept Dow’s position that the scope of the doctrine of responsible intermediary were to include bulk chemical sales, Pride cannot be held, as a matter of law, *493 to be a responsible intermediary. Factually, to determine whether an intermediary should be held to be "responsible”, one must consider evidence of whether the intermediary is adequately trained about the risks of the product; evidence of whether the intermediary is familiar with the properties of the product and its safe use; and evidence of whether the distributor is capable of passing on its knowledge to the user (Aim, v Aluminum Co., 717 SW2d 588 [Tex]). Dow asserts that Pride has substantial expertise related to the product, not only having received training from Dow respecting the solvent, but itself having participated in joint seminars for customers of Neu-Tri. Also, Dow provided Pride with warning labels to be affixed to the product. It cannot be determined, as a matter of law, that Pride was a "responsible intermediary” since issues of fact exist as to the adequacy of the warning, as well as Pride’s knowledge of the health risks.
Were that not sufficient, even were this court to accept the doctrine as applied to the facts of this case, summary judgment would be denied because a question of fact also exists as to the adequacy of the warning provided to Pride by Dow. The adequacy of a warning "in all but the most unusual circumstances” is a question of fact (Cooley v Carter-Wallace, Inc., 102 AD2d 642). As noted by the Court of Appeals, the adequacy of the warning "turn[s] upon a number of factors, including the harm that may result from use of the product without notice, the reliability and any possible adverse interest of the person, if other than the user, to whom notice is given, the burden on the manufacturer or vendor involved in locating the persons to whom notice is required to be given, the attention which it can be expected a notice in the form given will receive from the recipient, the kind of product involved and the number manufactured or sold, and the steps taken, other than the giving of notice, to correct the problem”. (Cover v Cohen, 61 NY2d 261, 276.) The trier of fact must assess the reasonableness of the actions of the manufacturer with respect to its warning in light of the above factors to determine whether the warning is adequate to the responsible intermediary (Pride) (supra, at 276-277).
Dow claims that the warnings to Pride were fully descriptive and complete and adequate by any standards so that, as a matter of law, it fulfilled the requirement of adequacy of the warning and further, that Dow provided Pride with labels on the tank cars which transported the bulk shipment of Neu-Tri solvent. These labels state that Neu-Tri is harmful, if inhaled, *494 and thereby, special breathing apparatus should be utilized; that one must avoid prolonged and repeated contact with the skin and that it should not be taken internally. Dow also provided Pride with safety literature and training seminars informing Pride of the nature of the chemical. Furthermore, Pride was required to place labels, which Dow provided, with similar safety information as the ones on the tank cars, on the packages that it provided to users.
Although Dow did provide a warning, the adequacy of the warning must be commensurate with the risk of harm and level of potential of such harm (McLaughlin v Mine Safety Appliances Co., 11 NY2d 62, 69; Cooley v Carter-Wallace, Inc., supra, at 646). In this case involving a chemical which can have fatal consequences if not properly used, it cannot be held that Dow’s actions establish the adequacy of warning, as a matter of law (cf, Fox v Wyeth Labs., 129 AD2d 611).
In addition to the adequacy of the warning, Dow would be required to establish, in order to be entitled to judgment on the law, under the doctrine of responsible intermediary, that in balancing the factors of the case, it could reasonably discharge its duty to warn by providing an adequate warning to the responsible intermediary (Shell Oil Co. v Gutierrez, 119 Ariz 426, 581 P2d 271). Some jurisdictions have indicated that ttiere is no need to look at this issue since providing an adequate warning to the responsible intermediary discharges the manufacturer’s duty to warn the ultimate consumer (see, Jones v Hittle Serv., 219 Kan 627, 549 P2d 1383).
However, this court believes each case must be examined in order to determine whether it is reasonable under the circumstances for the manufacturer to rely on the responsible intermediary (Whitehead v Dycho Co., — SW2d — [Ct App, Tenn, Dec. 11, 1987]). The factors to be balanced include the dangerous nature of the product; the form (liquid, gas or solid) in which the product is used; the intensity and form of the warning provided; the impracticability of requiring warnings to the ultimate user and the likelihood that the warning will be adequately communicated to those who will be the ultimate users of the product (Dougherty v Hooker Chem. Corp., 540 F2d 174, 179; cf., Cover v Cohen, supra, at 276) (the adequacy of the warning looks both at the nature of the warning and to whom it should be given). There may be cases where the danger involved is so great that "the supplier does not exercise reasonable care in entrusting the communication of the necessary information even to a person whom he has good *495 reason to believe to be careful” (Restatement [Second] of Torts § 388, comment n; cf, Cooley v Carter-Wallace, Inc., supra). Whether the manufacturer has discharged its duty to warn the ultimate user by providing an adequate warning to a responsible intermediary in light of the aforementioned considerations is a question of fact (Whitehead v Dycho Co., supra; Shell Oil Co. v Gutierrez, supra; Jones v Meat Packers Equip. Co., 723 F2d 370).
Therefore, summary judgment is not appropriate, even were the doctrine of responsible intermediary extended to chemical suppliers in bulk.
Additionally, Pride and Dow each assert that their respective duties to warn Christopher Billsborrow of the risk of the product has been discharged, because Henry Medina and George Medina had sufficient knowledge of the potential dangers of the utilization of Neu-Tri. The doctrine Pride and Dow assert for this position is the doctrine of knowledgeable user (sometimes called sophisticated user), which, under some circumstances, has permitted a manufacturer or intermediary to be discharged of their duty to warn the ultimate user because the user is fully aware of the nature of the product and the dangers associated with it, so that providing warnings would be redundant (Rosebrock v General Elec. Co., 236 NY 227; Billiar v Minnesota Min. & Mfg. Co., 623 F2d 240 [applying New York law]).
First, the doctrine has been limited to members of a trade or profession involved with the product (Young v Elmira Tr. Mix, 52 AD2d 202). An unskilled worker, even with some familiarity of the product’s nature, cannot be a knowledgeable user (Billiar v Minnesota Min. & Mfg. Co., supra). There is no evidence that Christopher Billsborrow had sufficient knowledge of Neu-Tri to classify him as a knowledgeable user. Secondly, the knowledge of the employer cannot be imputed to the employee to establish that the employee is a knowledgeable user (Whitehead v Dycho Co., supra; cf., Cohen v St. Regis Paper Co., 109 AD2d 1048). Therefore, the fact that the decedent’s employer had knowledge of the product and its dangerous propensity does not immunize either Dow or Pride from its failure to warn the ultimate user.
The parties are directed to appear for a pretrial conference before this court on May 3, 1988 at 9:30 a.m., Supreme Court, Trial Term, Part VII, Veterans Memorial Highway, Hauppauge, New York.