OPINION OF THE COURT
Helen E. Freedman, J.
Nelly Doris Medina died on May 20, 1983 from complications of toxemia during her eighth month of pregnancy. The administrator of her estate contends that Nelly Medina’s death was caused or contributed to by her exposure to a chemical solvent, dimethylformamide (DMF), contained in one of the component parts of a dataphone located at her workplace, the New York Telephone Company, and by negligent medical treatment. The exposure occurred during the period April 25, 1983 to May 4, 1983, and the death occurred 11 days after her admission to Bellevue Hospital.
E.I. DuPont de Nemours and Company (DuPont) was the producer and bulk supplier of DMF, Sangamo Weston, Inc. (Sangamo) manufactured a capacitor, containing a chemical compound which included DMF; and AT&T Technologies, Inc./Western Electric, Inc. (AT&T) installed the capacitor into a dataphone at Medina’s workplace. The cápacitor failed and released DMF into the air.
*368 The claim against DuPont is based on failure to warn decedent of the toxicity of its product, DMF. The claims against Sangamo, AT&T and New York Telephone include failure to warn and defective product design. The claims against the treating physicians and hospital involve negligent treatment of the toxemic condition.
DuPont seeks summary judgment dismissing all claims against it on the grounds that: (1) as a bulk supplier of DMF, it had no duty to warn plaintiff’s decedent; and (2) any duty owed was satisfied by issuance of sufficient warnings to the immediate distributors of DMF, Ashland Chemical Co. and Axton-Cross, Inc. (not parties to this action), as well as to the other parties in the chain of distribution, Sangamo, AT&T and New York Telephone Company. Plaintiff and defendants AT&T, Sangamo, Isvan Tornai, M.D. and New York Telephone oppose DuPont’s motion contending that there are outstanding issues of fact as to the nature of the duty and the adequacy of DuPont’s warnings.
Defendant New York City Health & Hospitals Corporation (NYCHHC) moves to dismiss the cause of action for pain and suffering against it on the ground that more than 90 days elapsed between the date of Medina’s death and her administrator’s filing of a notice of claim. Plaintiff opposes this motion on the ground that a notice of claim including wrongful death and pain and suffering was filed within 90 days of his appointment as administrator.
FACTS
Prior to her death, Nelly Medina was employed as a file clerk in a control center which monitored electronic switching systems at New York Telephone Company in midtown Manhattan. During the week of April 20, 1983, control center employees noticed a "foul fishy” odor emanating from the outer hallway. The odor lingered for approximately one week before New York Telephone repairmen discovered that it came from a piece of equipment known as a Dataphone 9600, located in an enclosed cabinet in the hallway next to the control center. A subsequent examination disclosed that a pressure sensitive vent on top of 1 of the 4 capacitors in the dataphone had given way, venting DMF vapors, which in turn produced the odor.
The AT&T dataphone is a diagnostic device about the size of a stereo receiver designed to identify malfunctions in a data communications network. One of the components of the data- *369 phone installed by AT&T was an electronic device called a capacitor which contained a small quantity of DMF as part of its power supply. Located inside the capacitor is a covered section consisting of two lengths of foil separated by paper wound in a roll. During production, the paper is impregnated with a solution which consists of about 100 grams of DMF mixed with other chemicals.
DuPont has manufactured DMF since the 1930’s and currently supplies approximately one half of the United States market for the compound. DuPont’s normal practice was to deliver the chemical in railroad tank cars, tank trucks and 55-gallon steel drums to its distributors, Ashland Chemical Company and Axton-Cross, Inc. who transferred it to their own storage tanks. The distributors customarily sold DMF to Sangamo to be used as an electrolytic industrial solvent in its capacitors. One of these capacitors was sold to AT&T’s predecessor, Western Electric, and inserted into a Dataphone 9600. AT&T supplied the Dataphone 9600 to the New York Telephone office.
 Based upon the discussion below, defendant DuPont’s motion for summary judgment is granted and NYCHHC’s motion is denied.
BULK SUPPLIER’S DUTY TO WARN
(1) The first issue to be addressed is the extent of the duty of the bulk supplier to warn a remote party injured as a result of contact with an altered product. While no New York appellate decisions are directly on point, cases from other jurisdictions concerning the role of the bulk supplier are instructive. Most courts have ruled that a bulk supplier who lacks control over ultimate product is not liable to a remote user. For example, the Supreme Court of Kansas granted summary judgment to the bulk supplier of propane gas, whose repackaged product injured a purchaser of a tank of gas for home use. It held that a bulk supplier is in an entirely different position from one who sells packaged commodities, or one who deals directly with the consumer. If a product is sold in bulk, adequate warning to the manufacturer’s immediate customer is all that can be reasonably required. (Jones v Hittle Serv., 219 Kan 627, 549 P2d 1383 [1976].)
Similarly, the California Court of Appeal affirmed dismissal motions made by the bulk manufacturer of sulfuric acid subsequently used in producing a drain cleaner which later exploded (Walker v Stauffer Chem. Corp., 19 Cal App 3d 669, *370 96 Cal Rptr 803 [1971]), and by the bulk supplier of fuel whose product was repackaged by an intermediary and later exploded. (Groll v Shell Oil Co., 148 Cal App 3d 444, 196 Cal Rptr 52 [1983].) In the latter case, the court found that assigning responsibility to a bulk manufacturer to issue warnings through the chain of distribution and processing to downstream consumers created an onerous burden and imposed severe enforcement problems on the manufacturer. (Groll v Shell Oil Co., supra, 148 Cal App 3d, at 449, 196 Cal Rptr, at 55.) In distinguishing bulk supplier cases, which had imposed a duty on a manufacturer to warn an ultimate consumer, the Groll court stated that those cases involved tangible items that could be labeled or sent in the chain of commerce with a manufacturer’s instructions.
Other jurisdictions including Federal courts applying State law, have also adopted the bulk supplier doctrine where the supplier has distributed a product to a series of intermediaries, with appropriate warnings and has had no contact with the individual ultimately injured by the product. (See, Tasca v GTE Prods. Corp., 175 Mich App 617, 438 NW2d 625 [1988]; Shell Oil Co. v Harrison, 425 So 2d 67 [Fla Dist Ct App 1982] [State cases]; Higgins v DuPont de Nemours & Co., 671 F Supp 1055 [D Md 1987]; Mason v Texaco Inc., 862 F2d 242 [10th Cir 1988]; Adams v Union Carbide Corp., 737 F2d 1453 [6th Cir 1984]; Manning v Ashland Oil Co., 721 F2d 192 [7th Cir 1983]; Goodbar v Whitehead Bros., 591 F Supp 552 [WD Va 1984], affd sub nom. Beale v Hardy, 769 F2d 213 [4th Cir 1985].) Summary judgment has been denied to bulk manufacturers only when there has been a complete failure to warn. (See, e.g., Whitehead v St. Joe Lead Co., 729 F2d 238 [3d Cir 1984].)
Recently, a New York court adopted the bulk supplier doctrine in a case similar to the one before this court. (Matera v Worksafe, Inc., Sup Ct, NY County, Nov. 30, 1989, Baer, J., index No. 17332/85.) Monsanto produced fibers which were spun and woven into fabric and then cut into work clothing by various intermediaries. The court determined that imposing a duty to warn a distant consumer upon a bulk supplier of prime material, would oblige the manufacturer to research, study, discover and anticipate all possible uses and possible risks of all finished products. Imposing such a requirement upon the manufacturer is not only impractical but also probably not feasible.
In the case at bar, decedent was not in fact even an *371 ultimate user of DMF but rather an employee in a workplace whose contact with the product was fortuitous.
The Matera court distinguished Billsborrow v Dow Chem. (139 Misc 2d 488 [Sup Ct, Suffolk County 1988]), relied on by plaintiff, which denied summary judgment to Dow Chemical, a bulk supplier of chemical solvent, on the ground that product sold by Dow was in the same form when it injured the ultimate user.
In Billsborrow (supra) the court found that factual issues remained as to both the adequacy of the warnings supplied to the intermediary, as well as to the actual knowledge concerning health risks possessed by the intermediary and thus, whether the intermediary was capable of passing that knowledge on to the ultimate user.
(2) Thus, the second issue is the adequacy of DuPont’s warnings to its immediate distributors and distributees.
In contrast to Billsborrow (supra), DuPont has set forth persuasive evidence that it acted reasonably and appropriately in its role as a bulk supplier by adequately warning purchasers of DMF of its dangers. Every drum of DMF bore a warning label. In addition, DuPont disseminated information about DMF to its distributors and customers through regularly updated labeling and product literature, providing its distributors with the following warning material: (1) labels to be affixed to distributor’s drums; (2) a lengthy bulletin entitled "Properties and Uses of Dimethylformamide”; (3) a "data sheet” booklet and (4) a material safety data sheet pamphlet (MSDS). These documents were prepared and revised by scientists and medical experts in DuPont’s Chemicals and Pigments Department.
Additionally, the standard DuPont sales invoice, as well as its distributor agreements, contained language to the effect that the purchaser agrees to "become familiar with and * * * insure that his employees are familiar with and follow recommendations given in the produces] labeling and in the literature provided”.
Moreover, each party in the chain of distribution was a sophisticated user of DMF, and as a responsible intermediary, was aware of the toxicological characteristics of DMF and the necessary precautions to be taken when handling the product.
Sangamo has used DMF since 1975. According to the exhibits annexed to defendant’s papers, Sangamo gave both special warnings to workers involved in preparing the electrolyte *372 solution,* and furnished its own material safety data sheet (MSDS) to its employees, agents, contractors and customers to apprise them of the dangers of DMF. Similarly, AT&T/Western Electric also produced its own MSDS specifically warning against the dangers of DMF.
New York Telephone maintained a DMF material data safety sheet in its files. The MSDS maintained by New York Telephone’s corporate safety department written by General Electric provided actual notice of the effects which overexposure to DMF could have upon its employees.
While the theory of the "responsible intermediary” has not yet been applied to bulk chemical manufacturers, New York courts have espoused this concept in cases involving prescription drugs. A drug manufacturer’s duty is to provide appropriate warnings to the prescribing physician and not directly to the patient. (Wolfgruber v Upjohn Co., 72 AD2d 59 [4th Dept 1979], affd 52 NY2d 768 [1980].) Once a manufacturer provides adequate warnings to physicians either through the package insert or the compilation of package inserts in the Physicians Desk Reference, it cannot be held liable to a patient on a failure to warn theory.
In sum, as a bulk supplier of DMF, DuPont had no duty to warn Nelly Medina of the toxicological characteristics of the chemical as she was too remote in the chain of distribution. In addition, the evidence is uncontroverted that DuPont provided extensive warnings to its immediate distributees and each of the parties in the chain of distribution was a responsible intermediary, fully aware of the implications of exposure to DMF. Finally, DuPont had no control over the use of the DMF once the form was altered. Thus, to require DuPont to provide warnings to Nelly Medina, whose exposure to DMF was fortuitous, would place an unduly onerous burden upon DuPont.
NOTICE OF CLAIM
Defendant NYCHHC’s motion to dismiss plaintiff’s claim for conscious pain and suffering based on failure to file a timely notice of claim is denied.
Section 50-e (1) (a) of the General Municipal Law states that a notice of claim must be filed "within ninety days after the claim arises; except that in wrongful death actions, the ninety *373 days shall run from the appointment of a representative of the decedent’s estate.”
It is not disputed that the notice of claim for the wrongful death aspect of the action was timely filed inasmuch as it was filed within 90 days of the appointment of the administrator. However, NYCHHC contends that the time for filing the claim for the conscious pain and suffering cause of action expired 90 days after decedent’s death and not 90 days after the administrator was appointed.
Section 50-e (5) of the General Municipal Law empowers the court to grant leave to a plaintiff to serve a late notice of claim. Implicit in this provision is the right to deem as timely what may appear to be a late notice, based on all of the "relevant facts and circumstances”.
Here the decedent died on May 20, 1983 after only 11 days of hospitalization. Rivers was not appointed administrator of her estate until September 6, 1983, more than 90 days after her conscious pain and suffering ended. Medina’s extremely serious condition and her short hospitalization prior to death, together with the delay in having an administrator appointed, made a timely filing of notice of claim impossible. Until an administrator was appointed, there was no one who could have filed such a claim. Further, plaintiff’s late filing of notice for the conscious pain and suffering claim has not prejudiced NYCHHC, particularly in view of the fact that the factors responsible for the pain and suffering and wrongful death are identical.
Accordingly, DuPont’s motion for summary judgment is granted and NYCHHC’s motion for summary judgment is denied.

 Sangamo Electrolyte Preparation Specifications.