**MIDWEST SPECIALTIES, INC., et al., Plaintiffs,**

v.

**CROWN INDUSTRIAL PRODUCTS CO., et al., Defendants.**

**No. 3:93 CV 7301.**

United States District Court, N.D. Ohio, Western Division.

Oct. 7, 1996.

---

Michael F. O'Loughlin, Theodore G. Gudorf, O'Loughlin & Gudorf, Dayton, OH, for Midwest Specialties, Inc., M–S Enterprises Inc., Richard D. Kennedy.

Dale L. Katzenmeyer, Thomas M. Parker, Lori L. Siwik, Roetzel & Andress, Akron, OH, Robert B. Fitzgerald, Baran, Piper, Tarkowsky, Fitzgerald & Theis, Mansfield, OH, for Pittsburgh Plate Glass Company.

Keith J. Watkins, Robert J. Bahret, Jones & Bahret, Toledo, OH, for Westfield Ins. Co.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on multiple motions. Defendant Pittsburgh Plate Glass Company ("PPG") has filed a motion for summary judgment on Plaintiffs' claims against it. Intervenor–Plaintiff Westfield Insurance Company ("Westfield") has filed a motion for summary judgment on the counter-claims brought against it by Defendants ICI Americas, Inc. ("ICI") and PPG. ICI has filed a motion to dismiss its counterclaim without prejudice pursuant to Fed.R.Civ.P. 41(a)(2). Several motions regarding the witnesses to be presented at trial are also pending.

For the following reasons, PPG's motion for summary judgment will be granted. Westfield's motion for summary judgment will be granted, although for different reasons than those proffered by Westfield. ICI's motion to dismiss will be denied. The motions regarding trial witnesses will be denied as moot.

## I. BACKGROUND

Plaintiffs Midwest Specialties, Inc., *et al.*, (collectively, "Midwest") brought this action against Defendants Crown Industrial Products Company ("Crown"), PPG, Hydrite Chemical Company ("Hydrite") and ICI, alleging that their factory was damaged when a cleaning solvent produced by defendants reacted with an aluminum motor housing to produce hydrochloric acid fumes. Midwest alleges damages in excess of $7,000,000 due to property damage and business interruption losses.

Intervenor–Plaintiff Westfield is Midwest's insurer. Westfield intervened in the suit seeking to recover the money it paid to indemnify Midwest for its losses.

ICI and PPG are bulk sellers of a chemical solvent, $CH_3CCl_3$, known as 1,1,1 trichloroethane. Both sellers sold 1,1,1 trichloroethane to Hydrite, an intermediate distributor. Hydrite supplied the 1,1,1 trichloroethane to

Crown. Crown produced cleaning solvent from 1,1,1 trichloroethane, and sold the product to Midwest.

Commercial 1,1,1 trichloroethane is produced in different grades, which are distinguished by the type and amount of stabilizers mixed with the compound to reduce its reactivity. General purpose grade 1,1,1 trichloroethane contains stabilizers that function to delay the onset of chemical reactions that occur when 1,1,1 trichloroethane comes into contact with certain metals, including aluminum; it is appropriate for a multitude of industrial purposes, including degreasing aluminum and other metal items. Aerosol grade 1,1,1 trichloroethane contains fewer stabilizers and reacts readily with aluminum; it should not be permitted to come into prolonged contact with aluminum.

Crown generally purchased general purpose grade 1,1,1 trichloroethane from a number of producers, commingled the chemicals in a bulk storage tank with a 53,000 pound capacity, and then packaged the product for resale as a cleaning solvent which was safe to use with aluminum. Shortly before the container of cleaning solvent here at issue was produced, however, Crown purchased three truckloads of aerosol grade 1,1,1 trichloroethane from PPG. Approximately 98.4% of the 1,1,1 trichloroethane in the bulk tank on the date of manufacture was aerosol grade 1,1,1 trichloroethane manufactured by PPG. The remaining 1.6% was general purpose grade 1,1,1 trichloroethane supplied by ICI.

PPG's product brochures and labeling warned purchasers and users against permitting aerosol grade 1,1,1 trichloroethane to come into contact with aluminum. Each barrel of chemical sold to Hydrite contained a hang tag that read: "DO NOT USE WITH ALUMINUM, Not stabilized for any use with aluminum." PPG sent product brochures and bulletins to Crown that said: "Avoid use with aluminum" and "Aluminum should not be used in contact with Tri–Eth-ane 348 [aerosol grade 1,1,1 trichloroethane]

either as materials of construction for storage tanks, lines, pumps. We also do not recommend it in contact with aluminum for cleaning purposes." Plaintiffs do not dispute that both Hydrite and Crown had actual knowledge that aerosol grade 1,1,1 trichloroethane is incompatible with aluminum.

Prior to 1987, PPG's Material Safety Data Sheet ("MSDS"), required under 29 C.F.R. § 1910.1200(g),[1] reported that aerosol grade 1,1,1 trichloroethane reacted chemically with, and was therefore incompatible with, caustic soda, caustic potash, oxidizing materials, and aluminum. Between 1987 and 1989, the word "aluminum" was inadvertently omitted from the MSDS "incompatibility" list due to a clerical error. Thus, the MSDS delivered to Hydrite accompanying the shipments of 1,1,1 trichloroethane at issue did not contain a warning against permitting the solvent to come into contact with aluminum. However, Hydrite produced its own MSDS to submit to Crown, and Hydrite's MSDS did identify aluminum as being incompatible with aerosol grade 1,1,1 trichloroethane.

In October, 1988, Crown revised its aerosol grade 1,1,1 trichloroethane MSDS, which had previously identified the compound as being incompatible with aluminum. The language of the 1988 revision closely tracks the language of the 1987–1989 PPG MSDS, and does not include aluminum on the list of chemicals and/or materials with which aerosol grade 1,1,1 trichloroethane is incompatible.

The accident giving rise to this case occurred in June, 1991, when a Midwest employee left an aluminum motor housing in a five-gallon bucket of solvent over the weekend. The aluminum reacted with the 1,1,1 trichloroethane and atmospheric water vapor to form hydrochloric acid vapors, and the vapors are alleged to have caused significant damage to Midwest's building, manufacturing equipment and inventory.

When Midwest filed its claim for coverage with Westfield in 1991, Westfield denied the

---

1. Federal law requires the manufacturer to develop the MSDS. The distributor, Hydrite in this case, is responsible for ensuring that its customer is provided a copy of the MSDS. 29 C.F.R. § 1910.1200, app. E(B). However, it is customary in the trade for manufacturers to provide MSDS's to downstream purchasers, and for those downstream purchasers to rely on the information contained therein.

claim on the grounds that the loss was excluded from coverage under a policy limitation excluding coverage for damage caused by "smoke, vapor or gas from ... industrial operations." Midwest brought suit against Westfield in state court in Ohio, seeking a declaration that the claims were covered under the insurance policy, and alleging that Westfield had acted in bad faith in denying Midwest's claims. The trial court granted summary judgment to Midwest on the issue of coverage. The parties settled the bad faith claim.

Midwest then brought the instant action against its seller Crown, the distributor Hydrite, and manufacturers ICI and PPG. Midwest alleged that the defendants had failed adequately to warn it of the risks associated with allowing aluminum to come into contact with 1,1,1 trichloroethane. Westfield intervened as a party plaintiff on a subrogation claim. The defendants filed counterclaims against Westfield for indemnity and/or contribution, claiming that Midwest's business interruption losses had been caused in large part by Westfield's refusal immediately to pay Midwest's claim.

ICI was dismissed as a party defendant by Memorandum Opinion and Judgment entered on December 28, 1995. This Court found that the amount of ICI product in the bulk storage tank was not a substantial or significant factor in causing Plaintiffs' harm, and granted ICI's motion for summary judgment on the ground that Plaintiffs could not show ICI's product proximately caused the injury.

Plaintiffs settled with Hydrite and Crown on June 26, 1996.

Still remaining in the case are Plaintiffs' claim against PPG, and ICI's and PPG's counterclaims against Westfield. Trial on those claims is set for November 13, 1996.

PPG has moved for summary judgment on Plaintiffs' claims. It argues that it satisfied its duty to warn by attaching warning labels to containers of its product and by issuing product brochures and bulletins warning purchasers that aerosol grade 1,1,1 trichloroethane is incompatible with aluminum. It argues further that even if it breached its duty

to warn, Plaintiffs cannot show that such failure proximately caused the harm at issue, because Hydrite and Crown had actual knowledge of 1,1,1 trichloroethane's reactive propensities.

Westfield has moved for summary judgment on the counterclaims. It argues that it can be liable only if its denial of Midwest's claim was in bad faith, and that it cannot be found to be in bad faith as a matter of law. ICI has not filed opposition to Westfield's motion. It has responded by representing that it "no longer wishes to and has no need to pursue its counterclaim for contribution against Westfield" and moving voluntarily to dismiss its claim without prejudice under Fed.R.Civ.P. 41(a)(2). PPG opposes Westfield's motion on the merits.

## II. PPG's MOTION FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

As an initial matter, the Court sets forth the relative burdens of the parties once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Of course, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reas-

sert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### B. Duty to Warn

Plaintiffs allege first that PPG is liable under both the common law and Ohio Rev. Code § 2307.76 because it failed to ensure that adequate warnings about 1,1,1 trichloroethane's incompatibility with aluminum would be passed on to the ultimate user of the product. PPG responds that its warnings were adequate as a matter of law.

### 1. Common Law Failure to Warn

■ A manufacturer of a chattel can be liable to a downstream purchaser for failure to warn of the product's dangers if the manufacturer:

(a) knows that the chattel is likely to be dangerous for the use for which it is supplied;

(b) has no reason to believe that the ultimate user will realize its dangerous condition; and

(c) fails to exercise reasonable care to inform the user of the chattel's dangerous condition or of the facts which make it likely to be dangerous.

Restatement (Second) of Torts § 388 (1965) (adopted in *Adkins v. GAF Corp.*, 923 F.2d 1225 (6th Cir.1991); *Adams v. Union Carbide Corp.*, 737 F.2d 1453 (6th Cir.), *cert. denied*, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984); *Ditto v. Monsanto Co.*, 867 F.Supp. 585 (N.D.Ohio 1993), *aff'd*, 36 F.3d 1097 (6th Cir.1994) (all applying Ohio

law)). Under the "bulk supplier/sophisticated user," or "knowledgeable purchaser," doctrine, a manufacturer can discharge its duty to warn by providing the necessary information to an intermediary upon whom it can reasonably rely to communicate the information to the ultimate user of the product. *Id.* at cmt. n; *Adams*, 737 F.2d at 1456; *Ditto*, 867 F.Supp. at 591. Where a manufacturer raises a bulk supplier/sophisticated user defense, the pivotal question becomes the reasonableness of the supplier's reliance on the intermediary to provide the necessary warning. *Adkins*, 923 F.2d at 1230.

■ The first issue the Court must address is whether Hydrite and Crown possessed the information they required in order to provide adequate warnings to the ultimate user, Midwest. Plaintiffs do not dispute that both Hydrite and Crown had actual knowledge of 1,1,1 trichloroethane's propensity to react with aluminum, and that the chemical reaction could produce hydrochloric acid. Plaintiffs do not dispute that PPG itself informed both Hydrite and Crown, via warning labels and product brochures and bulletins, that aerosol grade 1,1,1 trichloroethane should not be permitted to come into contact with aluminum. Plaintiffs do not dispute that Hydrite gave Crown a Material Safety Data Sheet, which stated that aerosol grade 1,1,1 trichloroethane was incompatible with aluminum. Plaintiffs argue, however, that a reasonable jury could find PPG failed adequately to inform Hydrite and Crown of aerosol grade 1,1,1 trichloroethane's dangerous propensities, because the MSDS supplied by PPG to Hydrite failed to list aluminum as being incompatible with aerosol grade 1,1,1 trichloroethane.

■ The Court disagrees. A manufacturer does not act unreasonably by failing to warn intermediate purchasers of dangers of which the intermediate purchasers are already knowledgeable. *Smith v. Walter C. Best, Inc.*, 927 F.2d 736 (3d Cir.1990) (quoting Note, *Failures to Warn and the Sophisticated User Defense*, 74 Va.L.Rev. 579, 589 (1988)). One Court explained:

The cases have uniformly held that the purpose of a warning is to apprise a party

of danger of which he has no knowledge and thereby enable him to take measures which will protect him against those dangers; however, when a danger is obvious and generally appreciated, nothing of value is had by a warning and none is required under those circumstances.

*Huff v. Elmhurst–Chicago Stone Co.*, 94 Ill. App.3d 1091, 50 Ill.Dec. 453, 459, 419 N.E.2d 561, 567 (1981). Since PPG supplied both intermediaries with warnings, and both intermediaries had actual knowledge of the product's danger, PPG's belief that the intermediaries were adequately informed was reasonable.

■ Having determined that PPG reasonably believed that Hydrite and Crown were adequately informed, the Court next asks whether PPG's reliance on Hydrite and Crown to convey that information was reasonable. As a general rule, a manufacturer "fulfills [its] duty to the ultimate consumer when [it] ascertains that the distributor to whom [it] sells is adequately trained, is familiar with the properties of the [chattel] and safe methods of handling it, and is capable of passing on [its] knowledge to [its] customers." *Jones v. Hittle Service Inc.*, 219 Kan. 627, 549 P.2d 1383, 1394 (1976). However, the Sixth Circuit held in *Adkins v. GAF Corp.*, 923 F.2d 1225 (6th Cir.1991), that a manufacturer had breached its duty to warn when the manufacturer both failed to give its intermediary warnings and had actual knowledge that its intermediary was not warning the ultimate user, although the intermediary itself had independent knowledge of the product's danger.

Midwest does not claim that PPG had actual knowledge of Crown's failure to warn Midwest. It argues that a reasonable jury could find PPG's reliance on Hydrite and Crown to give the necessary warnings to be unreasonable, since PPG's MSDS was defective, and PPG could have foreseen that Crown would rely on PPG's MSDS in producing its own warnings.

Midwest's argument is unconvincing. Crown unquestionably had actual knowledge of 1,1,1 trichloroethane's incompatibility with aluminum. Crown received that information from PPG in the form of product brochures and bulletins, and PPG's pre–1987 MSDS. Crown also received that information in the MSDS produced by Hydrite. PPG knew that federal law obliged both Hydrite and Crown to warn their purchasers, and no evidence has been adduced to show that PPG was on actual notice that Crown's warnings might be deficient. Midwest has pointed to no cases, and this Court is aware of none, holding a manufacturer liable for failure to warn a downstream purchaser when the intermediate distributor had actual knowledge of a product's danger, in the absence of actual knowledge on the part of the manufacturer that the intermediary was not informing the ultimate users. "Modern life would be intolerable unless one were permitted to rely to a certain extent on others' doing what they normally do, particularly if it is their duty to do so." Restatement (Second) of Torts § 338 cmt. n.

Accordingly, the Court finds that PPG's reliance on Hydrite and Crown to provide warnings ultimate users was reasonable. Midwest's common-law claim must fail as a matter of law.

### 2. Statutory Failure to Warn

■ Ohio also creates a statutory cause of action for failure to warn consumers of a product's dangers. Under that law, a manufacturer is subject to liability if it:

(a) knows about a risk associated with its product; and

(b) fails to provide the warning that a manufacturer exercising reasonable care would have provided, in light of the likelihood the product will cause harm and the likely seriousness of that harm.

Ohio Rev.Code § 2307.76(A)(1) & (2). Midwest makes an *inclusio unius est exclusio alterius* argument that the bulk supplier/sophisticated user defense is not available to PPG under the statute. That argument is based on the presence of § 2307.76(C), which provides that the manufacturer of an ethical drug is not subject to liability for failure to warn the ultimate consumer if the manufacturer provides adequate warnings to the prescribing physician. Midwest argues that since the knowledgeable intermediary doc-

trine was expressly adopted only for pharmaceutical manufacturers, the doctrine cannot be used to protect bulk chemical suppliers from failure-to-warn claims brought under the statute.

The Court disagrees. While recognizing that Plaintiffs' position is not entirely without precedent, *see Billsborrow v. Dow Chemical, U.S.A.,* 139 Misc.2d 488, 527 N.Y.S.2d 352, 354 (1988) (New York *common law* has adopted the knowledgeable intermediary doctrine only in cases involving drug manufacturers) (*contra Rivers v. AT & T Technologies, Inc.,* 147 Misc.2d 366, 554 N.Y.S.2d 401, 403–04 (1990) (adopting the doctrine in case involving a chemical solvent)), the Court finds that the bulk supplier/sophisticated user doctrine applies to statutory, as well as common law, claims. That doctrine, rather than being an exception to the requirement that a manufacturer exercise reasonable care in warning consumers of risks associated with its product, is a means of assessing what constitutes reasonable care. A reasonable manufacturer may also use its understanding that an intermediary will provide warnings in determining the likelihood that a product will cause harm. Thus, the doctrine is implicit in the statutory language.

PPG reasonably relied on Hydrite and Crown to deliver product warnings to the ultimate users of 1,1,1 trichloroethane. It reasonably determined that warnings delivered by Hydrite and Crown would reduce the likelihood that the product would cause harm. Under the circumstances, the warnings provided by PPG were reasonable as a matter of law.

Furthermore, the statute at issue expressly provides that a manufacturer is not subject to liability for failure to warn about a risk that is a matter of common knowledge. § 2307.76(B). Courts in other jurisdictions have held that whether a risk is a matter of "common knowledge" is determined by reference to the industry in which the product is used, and that the risk need not be a matter of general knowledge in the lay community in order to be "common knowledge." *See Huff,* 50 Ill.Dec. at 459, 419 N.E.2d at 567. It is evident from the pleadings and depositions in this case that the risks associated with allowing 1,1,1 trichloroethane to come into contact with aluminum are a matter of common knowledge in the salient industry.

Accordingly, the Court finds Midwest's statutory claim for failure to warn fails as a matter of law.

### C. Design Defect

Plaintiffs next allege that PPG is liable to them because 1,1,1 trichloroethane is defectively designed, *i.e.,* it is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. On a motion for summary judgment, a party may not rest on its pleadings; specific facts must be shown to support a theory of liability. The only record evidence proffered by Plaintiffs is their argument that PPG's failure to warn made the product unreasonably dangerous. Plaintiffs have shown no facts tending to indicate that 1,1,1 trichloroethane is more dangerous than an ordinary consumer of the solvent would expect when used in an intended or reasonably foreseeable manner, as long as the consumer is given adequate warnings about not permitting the product to come into contact with aluminum.

Thus, Plaintiffs' design defect argument is, on the record before the Court, nothing more than a restatement of their failure-to-warn argument. Under the failure-to-warn theory the issue is whether PPG exercised due care in formulating and disseminating the warning, while under the design defect theory the issue is whether the lack of an adequate warning made the product unreasonably dangerous. The issue under either theory is essentially the same: was the warning adequate? *See Werner v. Upjohn Co.,* 628 F.2d 848, 858 (4th Cir.1980), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 862, 66 L.Ed.2d 804 (1981).

This Court has already found, supra, that PPG's warnings were adequate. Accordingly, Plaintiffs' design defect claim fails as a matter of law.

### D. Summary

PPG has shown that no material issue of fact exists as to whether it provided adequate warnings. Summary judgment must be en-

tered for PPG on the issue of its liability to Plaintiffs.

### III. WESTFIELD'S MOTION FOR SUMMARY JUDGMENT AND ICI'S MOTION TO DISMISS WITHOUT PREJUDICE

Westfield has filed a motion for summary judgment on the counter-claims for indemnity and/or contribution brought against it by ICI and PPG. ICI has filed a motion to dismiss its counterclaim without prejudice pursuant to Fed.R.Civ.P. 41(a)(2).

 Under Ohio law, a party seeking indemnity and/or contribution may recover only the amount it has paid in excess of its proportional share of the obligation. The right to indemnity and/or contribution becomes complete and enforceable only upon a payment by the claimant satisfying the whole of the obligation. *National Mut. Ins. Co. v. Whitmer,* 70 Ohio St.2d 149, 152, 435 N.E.2d 1121, 1123 (1982). In this case, it is undisputed that ICI and PPG have not paid any damages to Plaintiffs. Since the Court has granted both ICI's and PPG's motions for summary judgment, neither party will pay any damages. The right to contribution, therefore, will not arise. For that reason, the Court will grant Westfield's motion for summary judgment.

ICI has shown no reason for this Court to dismiss its counterclaim without prejudice, rather than on the merits. ICI's motion to dismiss without prejudice will, therefore, be denied.

### IV. MOTIONS RELATING TO TRIAL WITNESSES

Also pending in this case are several motions relating to the trial witnesses and their anticipated testimony. The Court's grant of PPG's summary judgment motion effectively disposes of these motions, since there is no longer a need for trial. All motions related to trial witnesses are, therefore, denied as moot.

### V. CONCLUSION

For the foregoing reasons, Defendant Pittsburgh Plate Glass Company's motion for summary judgment is granted. Intervenor-Plaintiff Westfield Insurance Company's motion for summary judgment is granted. Defendants ICI Americas, Inc.'s motion to dismiss is denied. The motions regarding trial witnesses are denied as moot.

IT IS SO ORDERED.