OPINION OF THE COURT
Edward H. Lehner, J.
In the five cases consolidated for trial, two juries were asked *123 to deal with injuries that resulted from exposure to asbestos that occurred, in some cases, over a half century ago. Regrettably, it appears that our legal system has to date been unable (although not through the absence of effort) to resolve the liability aspect of asbestos-related claims except through lengthy individual trials.
These five cases were tried through reverse bifurcation. On the damage aspect, the jury rendered a verdict awarding the following amounts for pain and suffering sustained by the respective decedents prior to their deaths:
White $2,700,000
Gantcher 2.500.000
Dolías 2.500.000
Venturino 2,000,000
Mangialomini 3,000,000
At the time of the subsequent liability aspect of the trial the only defendant remaining (who had not settled or had the case dismissed as against it) was Rapid-American Corporation (Rapid). In previous litigation, Rapid had been determined responsible for the liability of the Philip Carey Corporation (Carey), which company Rapid had acquired in the 1960’s. Thus, while Rapid itself was not involved in the asbestos business, it admittedly is responsible for the acts of Carey, though it contends that it is not liable for any recklessness on the part of Carey.
At the liability trial the jury unanimously determined: that each of the decedents was exposed to Carey’s asbestos-containing products at their respective workplaces; that Carey’s failure to warn the decedents of the dangers of asbestos was a proximate cause of the death of each of the decedents; and that Carey was liable to each of the decedents for the failure to warn.
The jury was also required to answer various questions with respect to the 15 to 32 other entities who had originally been named as defendants, but who had either settled with the plaintiffs or had filed for bankruptcy protection. The companies listed were agreed upon by counsel and differed in each of the five cases. The questions with respect to these "non-party defendants” were: (1) whether any of them were responsible for their "respective failure to warn”; (2) whether the decedent was exposed to their asbestos-containing products; and (3) whether the exposure was a proximate cause of the respective decedent’s mesothelioma. For the entities to which the jury *124 answered "yes” to each of these three questions, the jury was requested to state "the percentage of responsibility” that such company bears for the death of the decedent. In all of the cases the jury attributed 50% of the responsibility to Carey. The number of companies which the jury found not responsible varied from two to seven, with no company (other than Carey) found more than 10% responsible except in one case in which two companies were each found 20% at fault. The vast majority of the remaining companies were found only 1% responsible.
In the final question on each verdict sheet, the jury determined that Carey acted in "reckless disregard for the safety of others”.
After the damages aspect of the trial Rapid moved for a new trial asserting that the amounts awarded were excessive, and similarly moved for a new trial on the liability aspect, asserting, among other claims: (1) that the court incorrectly charged the jury that knowledge of the various companies of the dangers of asbestos should be considered in apportioning responsibility; (2) the court incorrectly refused to admit in evidence the interrogatories served by certain former defendants who were not parties at the time of trial; (3) the apportionment of 50% of the responsibility to Carey was against the weight of the evidence; and (4) the proof did not show that Carey acted recklessly in the three cases where the exposure was prior to 1947 (White, Gantcher and Mangialomini).
THE ISSUE OF DAMAGES
At the trial on damages the parties stipulated that each of the decedents died from mesothelioma, which deaths were caused by occupational exposure to asbestos.
In determining whether the jury award of damages was excessive, this court must employ the standard of review to be applied by the Appellate Division, which is whether the award "deviates materially from what would be reasonable compensation” (CPLR 5501 [c]). While statutorily that standard is set forth only in a section applicable to the Appellate Division, it is evident that a trial court should not apply a standard in adjudicating the issue which is different from that to be applied by the reviewing court.
Regarding the period of time from onset of the illness to the date of death of each of the decedents, the parties have agreed that the record shows the following:
*125 White 12 months
Mangialomini 11 months
Venturino 4 months
With respect to Gantcher, the parties differ as to time, with plaintiff asserting 9x/2 months, while Rapid contends the time period to be 8 months. With regard to Dolías, there is a difference of approximately 1 month, with plaintiff asserting 8 months and defendant contending that, at a maximum, it should be 7 months.
Considering all the testimony as to the suffering of the respective decedents, including the period of time of such suffering, Rapid’s motion for a new trial on the issue of damages is granted with respect to any of the below-named decedents whose personal representative fails to stipulate in writing, within 30 days of the date hereof, to reduce the amount of the verdict for pain and suffering to the amount set forth below:
White $1,500,000
Mangialomini 1,500,000
Gantcher 1,000,000
Dolías 900.000
Venturino 600.000
THE INTERROGATORIES
Rapid maintains that I erred in not permitting it to offer in evidence interrogatories served by defendants who subsequently settled with plaintiffs, but whose names appeared on the verdict sh'eets. Rapid maintains that the interrogatories are admissible pursuant to CPLR 3131, which permits interrogatories to "be used to the same extent as the depositions of a party”.
The interrogatories sought to be offered dealt with the knowledge of the settling defendants as to the dangers of asbestos and contained acknowledgments of product content. Rapid asserts that if these interrogatories were before the jury, the percentage of responsibility attributed to the settling defendants would have been increased and that of Carey correspondingly decreased. Such a result would clearly be damaging to the plaintiffs by reason of the application of General Obligations Law § 15-108. While acknowledging that it could not use the answers against plaintiffs as to do so would deprive them of the right of cross-examination (see, United Bank v Cambridge *126 Sporting Goods Corp., 41 NY2d 254, 264 [1976]), Rapid maintains that since the interrogatories were answered at a time when the settling defendants were adverse to Rapid and the plaintiffs, they should have been admitted on the question of the percentage of responsibility of such defendants in light of the fact that Rapid had the burden under CPLR article 16 on that issue. Rapid, in essence, was seeking to do indirectly what it could not do directly. The same tactic was sought to be employed, but rejected, in Matter of Eighth Judicial Dist. Asbestos Litig. (197 AD2d 901 [4th Dept 1993]).
In ruling that the interrogatories served by a settling defendant could not be introduced by a nonsettling defendant because the answers "constituted hearsay” (supra, at 902), the Fourth Department in the above case relied on its prior decision in State Univ. Constr. Fund v Kipphut & Neuman Co. (159 AD2d 1003 [3d Dept 1990]). In that case, the language of CPLR 3117 (a) (2), permitting deposition testimony of "any adversely interested party” to be read at trial, was interpreted to require that the party be adverse as of the time of trial.
Although there is authority for the proposition that the question of adverse interest be determined as of the date of deposition (American Tel. & Tel. Co. v Lincoln Indus. Enters., 122 AD2d 925 [2d Dept 1986]; Iheme v Simmons, 148 Misc 2d 223 [Civ Ct, Richmond County 1990]), and effective this year CPLR 3117 (a) (2) was amended to permit deposition testimony to be used "by any party who was adversely interested when the deposition testimony was given or who is adversely interested when the deposition testimony is offered in evidence”, I uphold my ruling at trial, based on the aforesaid Fourth Department case, that the interrogatories of the settling defendants could not be used by Rapid.
The use of interrogatories is, by reason of CPLR 3131, governed by the provisions of CPLR 3117. This cross reference creates problems and I would recommend that the Legislature consider amending CPLR 3131 to deal specifically with the use of interrogatories. CPLR 3117 (a) permits the use of a deposition "so far as admissible under the rules of evidence” against "any party who was present or represented at the taking of the deposition or who had the notice required under these rules”. (CPLR 3117 [a] [3].) Such latter provision is totally irrelevant to interrogatories, which are generally prepared by a party’s lawyer and are self-serving statements. In United Bank v Cambridge Sporting Goods Corp. (supra), the Court of Appeals noted that matter contained in interrogatories "consti *127 tutes hearsay and is admissible as evidence-in-chief only insofar as a hearsay exception is available * * * [and that] [w]here the party who served the interrogatories is the proponent, the hearsay problem is eliminated because the answers are admissible under the admissions exception to the hearsay rule * * * but where the party responding is the proponent, the hearsay rule presents a barrier to admission” (at 264). The Court concluded that because an adversary party did not have the opportunity to cross-examine the defendant answering the interrogatories, the answers could not be used against that party.
Similarly here, since plaintiffs had no opportunity to cross-examine the settling defendants, their responses to interrogatories could not be used, in the indirect manner proposed by Rapid, against the interests of plaintiffs. It is noted that Rapid always had the opportunity to subpoena the nonsettling defendants at trial or request depositions of them prior thereto.
THE JURY CHARGE
Rapid asserts that I improperly permitted the jury to consider knowledge of the dangers of asbestos in apportioning responsibility (for the purposes of CPLR art 16) among the various corporations listed on the verdict sheets when I gave the following instruction: "In determining the percentage of that manufacturer’s responsibility you should consider the strengths of the proof regarding plaintiffs’ exposure to that manufacturer’s products and also the magnitude of that manufacturer’s misconduct.” (Emphasis supplied.)
In CPLR 1601 (1) it is provided that when: "the liability of a defendant is found to be fifty percent or less of the total liability assigned to all persons liable, the liability of such defendant to the claimant for non-economic loss shall not exceed that defendant’s equitable share determined in accordance with the relative culpability of each person causing or contributing to the total liability for non-economic loss” (emphasis supplied).
In using the phrase "magnitude of * * * misconduct”, I was merely paraphrasing the statutory language of "relative culpability”. The word "magnitude” is defined in Webster’s New Collegiate Dictionary as "size or extent” and "the importance, quality or caliber of something”, all terms dealing with relativity. However, although I did not instruct the jury to consider the knowledge of any party in considering its culpable conduct, I believe that actual knowledge of the risks of *128 asbestos, in addition to being a factor in determining recklessness, may be considered in determining "relative culpability”.
Here the wrong that was the basis of plaintiffs’ actions was the breach by defendants of their duty to warn workers of the dangers of asbestos, and it was stipulated by counsel that none of the parties sued gave such a warning. In my charge I stated that the "duty to warn extends to such dangers or defects about which the manufacturer either knew or should have known”. Thus, while all corporations listed on the verdict sheets can be said to have breached the duty to warn, it is fair for a jury in considering relative fault to ascribe additional responsibility for a failure to warn to companies who, through their own tests or experience, had actual knowledge of dangers not generally known in the industry.
In Kreppein v Celotex Corp. (969 F2d 1424 [1992]), the Second Circuit wrote, applying New York law, that "liability should be apportioned according to relative degrees of fault for the injury, which may include not only the strength of the causal link but also the magnitude of the fault”, and that evidence of the defendant’s "knowledge of the hazards of asbestos supported not only a finding of liability, but also punitive damages” (at 1426-1427).
In CPLR 1411, dealing with comparative fault, the statute refers to "culpable conduct which caused the damages”. This wording resulted in the Court of Appeals stating in Arbegast v Board of Educ. (65 NY2d 161 [1985]), that "[c]omparative causation” is "the more accurate description of the process” (at 168). However, CPLR 1601 omits the words of causation contained in CPLR 1411. Thus, I find that there is no basis to require proof of causation to establish culpable conduct under article 16.
In Arbegast (supra) the Court referred to a fact pattern presented in the 13th Annual Report of the Judicial Conference on the CPLR (reprinted in 21st Ann Report of NY Jud Conf, ch 6, at 242) wherein P accepts a ride in an automobile driven by A with knowledge that A is intoxicated, and P is injured when that vehicle is struck while stopped at a traffic light by an automobile negligently driven by B. The report concludes that in an action by P against B there will be no diminution of damage in that while " 'P may have engaged in culpable conduct in accepting a ride with A, that conduct was not a substantial factor in causing the damage suffered by P’ ” (Arbegast v Board of Educ., at 168; emphasis supplied). If a similar fact pattern were presented in an article 16 case, adding only *129 that A’s intoxication was one of the causes of the accident, I believe (ignoring the fact that motor vehicle accidents are exempt from the provisions of article 16) that A’s knowledge that he was driving while intoxicated is a factor that properly may be considered in determining relative culpability, even though the knowledge itself may not be said to be a cause of the accident. Similarly, the knowledge of a manufacturer of the dangers of asbestos who fails to warn of the risks, although not a cause of an injury, may be considered in the allocation of "relative culpability” under CPLR 1601.
THE APPORTIONMENT OF FAULT
At trial the evidence of product identification essentially consisted of live and deposition testimony as to which company’s asbestos-containing products were observed at the various work locations, as well as the introduction of some invoices. However, while there was no evidence presented from which the jury could determine the dollar volume of product delivered to any particular work site, there was testimony from various witnesses indicating that there was a substantial amount of Carey product at the shipyards where the decedents were employed. Also received was evidence regarding Carey’s knowledge of the risks of working with these products. Although a strong argument was made that, based on the evidence presented, any apportionment of responsibility would be speculative, I am satisfied that the verdict is not contrary to the weight of the evidence (CPLR 4404 [a]) as it cannot be said that the apportionment " 'could not have been reached on any fair interpretation of the evidence’ ” (Grassi v Ulrich, 87 NY2d 954, 956 [1996]; see also, Lolik v Big V Supermarkets, 86 NY2d 744 [1996]).
RECKLESSNESS
Subsequent to the trial of this action, the Court of Appeals in Maltese v Westinghouse Elec. Corp. (89 NY2d 955 [1997]) upheld the lower court ruling that overturned the jury finding that Westinghouse demonstrated reckless disregard for the safety of the plaintiffs. The standard to establish recklessness that the Court reiterated was that the " ' "actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow” and has done so with conscious indifference to the outcome’ ” (at 956-957). *130 While the charge given was substantially in conformity with this standard, I find, as did the Court in that case (supra, at 956), "that no valid line of reasoning and permissible inferences could possibly lead rational people to the conclusion reached by the jury on the basis of the evidence presented at trial” that Carey acted with recklessness, as defined above, with respect to the pre-1947 injuries sustained by White, Gantcher and Mangialomini. Accordingly, the jury verdict on that issue with respect to these plaintiffs is set aside. Rapid makes no application with regard to such finding in the cases of Dolías and Venturino, whose injuries occurred in the 1960’s.