**In re ASBESTOS LITIGATION**

**This Document Relates to Greff, McPadden, Ciletti.**

**Nos. 87 Civ. 8085(RWS), 90 Civ. 3473(RWS) and 92 Civ. 3901(RWS).**

United States District Court, S.D. New York.

Nov. 5, 1997.

Levy, Phillips & Konigsberg, New York City, Moshe Maimon, of counsel, for plaintiffs.

Thompson, McNaboe, Ashley & Bull, Portland, ME, Thomas R. McNaboe, of counsel, for defendant.

## OPINION

SWEET, Senior District Judge.

Defendant Raymark Industries, Inc. ("Raymark") has brought a trio of post-trial motions in response to a jury verdict entered in favor of three plaintiffs in these consolidated asbestos actions. First, Raymark has moved for judgment as a matter of law pursuant to Rule 50(b), Fed.R.Civ.P., or in the alternative, grant of a new trial, pursuant to

Rule 59(a), Fed.R.Civ.P., as against Helen Greff, Ann McPadden, and Rosalie Ciletti, plaintiffs in this asbestos litigation, (collectively "Plaintiffs"). Second, Raymark has moved for amendment of the judgment, pursuant to Rule 59(e), Fed.R.Civ.P., in all three actions. Finally, Raymark has moved for entry of judgment, pursuant to Rule 58, Fed. R.Civ.P., in favor of Raymark and against Empire Ace, Owens–Corning Fiberglas, and Manville Trust in the action brought by Rosalie Ciletti. Plaintiffs have cross-moved for judgment as a matter of law and to amend the judgments in all three actions. For the reasons set forth below, Plaintiffs' motion is denied, and Raymark's motions for new trial, amendment of the judgment and entry of judgment are denied. Raymark's motion for judgment as a matter of law is granted only as to the setting aside of an award for loss of parental consortium in the *McPadden* action.

### Facts and Prior Proceedings

*Ciletti*, 92 Civ. 3901, ("*Ciletti*"), *Greff*, 87 Civ. 8085, ("*Greff*"), and *McPadden*, 90 Civ. 3473, ("*McPadden*"), are three of the asbestos cases that have been supervised by the Multi–District Litigation Panel for discovery and pretrial purposes. Each of these actions was originally filed in the Southern District of New York and subsequently transferred by order of the Multidistrict Litigation Panel to the Honorable Charles Weiner of the Eastern District of Pennsylvania. They were then transferred back to this Court for trial purposes on the basis of hardship arising out of trial delay.

The three actions were consolidated by opinion dated March 28, 1997, along with two others, *Strafford*, 92 Civ. 3900, ("*Strafford*") and *Moore*, 88 Civ. 4214 ("*Moore*"). *In re Asbestos Litigation*, 173 F.R.D. 81 (S.D.N.Y. 1997). Of the consolidated actions, *Ciletti*, *Greff*, *McPadden* and *Strafford* proceeded to trial against defendants Raymark and John Crane, Inc., ("John Crane"). A sixteen day trial was held between May 20, 1997 and June 20, 1997.

The claims in *Ciletti* are brought by Rosalie Ciletti, the widow of Alfred Ciletti. Mr. Ciletti worked as a sheet-metal worker at various shipyards between 1940 and 1973, including the Brooklyn Naval Shipyard from 1955 to 1966. Mr. Ciletti worked aboard several Navy vessels on which asbestos products manufactured by or sold by Raymark's predecessor, Raybestos Manhattan, were actually used. Testimony established that Raybestos Manhattan asbestos cloth was used on these vessels during sheet-metal work. In March of 1992, Mr. Ciletti was diagnosed with malignant mesothelioma, a cancer uniquely associated with exposure to asbestos, the symptoms of which had begun during the summer of 1991. On July 1, 1992, Mr. Ciletti died as a result of his cancer, survived by plaintiff Rosalie Ciletti, three children and a grandson.

The claims in *Greff* are brought by Helen Greff, the widow of Joseph Greff. Mr. Greff worked as a welder at a shipyard between 1941 and 1984. Proofs at trial established that Mr. Greff regularly used asbestos cloth to protect himself from welding sparks. Testimony of Mr. Greff's co-workers established that Raymark's asbestos cloth was widely used at the shipyards where Mr. Greff worked. Supply buyers for both the Staten Island and Hoboken shipyards testified that they purchased asbestos products from Raybestos Manhattan. Mr. Greff developed malignant mesothelioma in the summer of 1985, and died from the cancer on March 25, 1986. He was survived by plaintiff Helen Greff, three children and six grandchildren.

The claims in *McPadden* are brought by Ann McPadden, the widow of Martin McPadden. Mr. McPadden worked as a mechanic and steam fitter between 1957 and 1973 on several naval ships and in several power-generating stations. Testimony established that asbestos cloth sold and manufactured by Raybestos Manhattan was used in shipyards during the time Mr. McPadden was serving aboard ships undergoing repair. Testimony also established Mr. McPadden's exposure to packing material distributed by John Crane, in which Raybestos Manhattan asbestos yarn was used. Mr. McPadden was diagnosed with malignant mesothelioma in 1989. He died a little over one year after his diagnosis, on October 6, 1990. He was survived by plaintiff Ann McPadden, and his two daughters, one twenty-five years and the other fifteen years old at the time of his death.

On June 13, the jury returned a verdict on liability for Plaintiffs in *Ciletti, Greff* and *McPadden* against defendant Raymark only. The jury found for defendant John Crane in all four actions, and found for defendant Raymark in *Strafford.* On June 16, the jury returned a verdict on damages in *Ciletti, Greff* and *McPadden.* All three Plaintiffs also received costs and post-judgment interest. Judgment was entered on June 20, 1997. The post-trial motions were filed in July and August. Opposition papers, cross-motion and replies in the motions were fully submitted by October 1, 1997.

### Discussion

**I. *Raymark's Motion for Judgment as a Matter of Law or New Trial***

Motion for judgment as a matter of law is granted where:

(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it.

*Cruz v. Local Union Number 3 of IBEW*, 34 F.3d 1148, 1154 (2d Cir.1994) (quoting *Bauer v. Raymark Indus., Inc.*, 849 F.2d 790, 792 (2d Cir.1988)); *accord Milbank, Tweed, Hadley & McCloy v. Boon*, 13 F.3d 537, 542 (2d Cir.1994); *Samuels v. Air Transport Local 504*, 992 F.2d 12, 14 (2d Cir.1993); *Mattivi v. South African Marine Corp, "Huguenot"*, 618 F.2d 163, 168 (2d Cir.1980). The evidence must be viewed in the light most favorable to the non-moving party and must draw all reasonable inferences in its favor. *Taylor v. National Railroad Passenger Corp.*, 868 F.Supp. 479, 482 (E.D.N.Y.1994) (citing *Weldy v. Piedmont Airlines, Inc.*, 985 F.2d 57, 60 (2d Cir.1993)).

A post-trial motion for judgment as a matter of law may not be asserted unless such a motion has also been made prior to submission of the case to the jury. Fed.R.Civ.P. 50(b); *Piesco v. Koch*, 12 F.3d 332, 340 (2d Cir.1993); *Taylor*, 868 F.Supp. at 482. The grounds supporting the earlier motion must be specifically articulated, and may include explicit references to materials and arguments previously supplied to the court. *Piesco*, 12 F.3d at 340. The post-verdict motion for judgment as a matter of law may not assert any grounds which were not raised in the earlier motion. *Lambert v. Genesee Hospital*, 10 F.3d 46, 54 (2d Cir.1993); *Hilord Chemical Corp. v. Ricoh Electronics, Inc.*, 875 F.2d 32, 37–38 (2d Cir.1989). The only exception to the requirement of a pre-verdict motion arises where denial of judgment as a matter of law would result in "manifest injustice." *Gibeau v. Nellis*, 18 F.3d 107, 109 (2d Cir.1994).

The standard for granting a new trial is less stringent than that for judgment as a matter of law. *Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970 (2d Cir.1987); *Bseirani v. Mahshie*, 881 F.Supp. 778, 783 (N.D.N.Y.1995) *aff'd*, 107 F.3d 2 (2d Cir.1997). On a motion for new trial "the judge may set aside the verdict even though there is substantial evidence to support it." 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d*, § 2806 at 65 (2d ed.1995). The court may weigh the evidence for itself without viewing it in the light most favorable to the verdict winner. *Id.* at 67; *Song v. Ives Laboratories, Inc.*, 957 F.2d 1041, 1047 (2d Cir.1992); *Paper Corp. of the U.S. v. Schoeller Technical Papers, Inc.*, 807 F.Supp. 337, 347 (S.D.N.Y.1992). Still, new trial may only be granted if "the court is convinced that the jury has reached a seriously erroneous result, or that the verdict is against the weight of the evidence, making its enforcement a miscarriage of justice." *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 370 (2d Cir.1988); *Taylor v. National Railroad Passenger Corporation*, 868 F.Supp. 479, 484 (E.D.N.Y.1994). Where, as here, a party moves jointly under Federal Rules of Civil Procedure 50(b) and 59(a), the court must rule separately on each motion. 9A Charles Alan Wright & Arthur R. Miller, § 2539 at 361; *Taylor*, 868 F.Supp. at 482.

**A. *The Court Did Not Err in Permitting Claim of Design Defect to Go to the Jury***

Raymark contends that the Court should have directed a defense verdict as to Plain-

tiffs' design defect claims because case law has established that design defect actions are barred where the defendant has presented a military contractor defense, and Raymark asserted certain elements of that defense.

■ The theory of design defect permits a manufacturer to be found strictly liable for placing an unreasonably dangerous product in the stream of commerce, where the design defect was "known at the time of manufacture, and a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner." *Denny v. Ford Motor Company*, 87 N.Y.2d 248, 257, 639 N.Y.S.2d 250, 662 N.E.2d 730 (N.Y.1995); *see also McCarthy v. Olin Corp.*, 119 F.3d 148, 154–55 (2d Cir.1997). The Court of Appeals has noted that, in design defect cases, "the alleged product flaw arises from an intentional decision by the manufacturer to configure the product in a particular way." *Denny*, 87 N.Y.2d at 257 n. 3, 639 N.Y.S.2d 250, 662 N.E.2d 730.

■ When the product is configured pursuant to government specifications, however, federal law protects the manufacturer from state law design defect liability. *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512, 108 S.Ct. 2510, 2518–19, 101 L.Ed.2d 442 (1988); *In re Brooklyn Navy Yard Asbestos Litigation*, 971 F.2d 831, 839 (2d Cir.1992) ("*Brooklyn Navy Yard*"). To assert this so-called military contractor defense, a defendant must show the following three elements:

(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Boyle*, 487 U.S. at 512, 108 S.Ct. at 2518. The rationale for these elements has been further articulated by the Second Circuit:

It is not unreasonable to imagine that, as in this case, government contracts often may focus upon product content and design while leaving other safety-related decisions, such as the method of product manufacture or the nature of product

warnings, to the contractor's sole discretion. In these instances, state law design requirements are displaced, although state law warning requirements are not.

*Brooklyn Navy Yard*, 971 F.2d at 840. Because the military contractor defense does not displace state law warning requirements, the last element of the defense is of particular importance. Raymark submitted evidence regarding the government specifications according to which its product was manufactured, Raymark Exhibits 73 and 74, but did not submit any evidence regarding warnings made to the government. Because Raymark did not establish all the required elements of the military contractor defense, neither judgment as a matter of law nor a new trial on the design defect claim may be granted. *See In re New York Asbestos Litigation*, 847 F.Supp. 1086, 1108 (S.D.N.Y. 1994), *aff'd in part, vac. in part, Consorti v. Armstrong World Indust., Inc.*, 72 F.3d 1003 (2d Cir.1995), *vacated, Consorti v. Owens–Corning Fiberglas Corp.*, —— U.S. ——, 116 S.Ct. 2576, 135 L.Ed.2d 1091 (1996), *on remand, Consorti v. Armstrong World Indust., Inc.*, 103 F.3d 2 (2d Cir.1995).

■ In its initial directed verdict motion, Raymark contended that it need not establish all elements of the military contractor defense because design defect claims are automatically barred where the contractor defense may be even potentially asserted. The cases cited by Raymark do not support this proposition. *Brooklyn Navy Yard*, 971 F.2d 831 (design defect claim barred by the military contractor defense after a full summary judgment briefing established all elements of the defense); *In re Joint Eastern and Southern District New York Asbestos Litigation*, 897 F.2d 626, 629 (2d Cir.1990) (military contractor defense is compatible with failure to warn claim; no consideration of its affect on design defect claims); *In re New York City Asbestos Litigation*, 144 Misc.2d 42, 542 N.Y.S.2d 118 (Sup.Ct.1989) (same); *Casabianca v. Casabianca*, 104 Misc.2d 348, 428 N.Y.S.2d 400 (Sup.Ct.1980) (supplier to the military "in time of war" would have defense to any action based on design; decided prior to establishment of elements of military contractor defense by *Boyle*).

In *Brooklyn Navy Yard*, the Circuit affirmed the district court's dismissal of plaintiff's design defect claim in cautionary terms, emphasizing the "particular appropriateness" of dismissing any invalid claims via the summary judgment mechanism. Here, Raymark not only failed to avail itself of summary judgment, it did not raise sufficiently detailed support in its directed verdict motion. Rather, Raymark merely submitted a copy of *Brooklyn Navy Yard* at the time of plaintiffs' closing arguments. As set forth above, *In re Brooklyn Navy Yard* does not squarely support Raymark's contention. The submission of the opinion was insufficient to constitute a motion for judgment as a matter of law on this ground. Such motions must "specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment." Rule 50(a)(2), Fed.R.Civ.P.

## B. Evidence of Exposure to Raymark Products Was Sufficient to Support the Jury's Verdict

In its notice of motion, Raymark cites insufficient evidence of exposure to its products as a ground for judgment as a matter of law or new trial, but then neglects to address this argument in its memorandum of law. "In considering a contention that the evidence was insufficient to support the plaintiff's claim, we view the evidence in the light most favorable to the plaintiff." *Brooklyn Navy Yard*, 971 F.2d at 835.

At trial, proofs were submitted in *Ciletti* in the testimony of Mr. Ciletti and several of his co-workers, which established that Raybestos Manhattan products were used on-board the ships employing Mr. Ciletti, and the products were specifically used in sheet-metal work, Mr. Ciletti's area of labor. In *Greff*, proofs at trial demonstrated that asbestos cloth was used by welders such as Mr. Greff, and that Raymark's asbestos cloth was widely used in the shipyards where he worked. In *McPadden*, Mr. McPadden had described his exposure to asbestos cloth, and other proofs demonstrated the extensive use of Raybestos Manhattan asbestos products on-board the ship employing Mr. McPadden. Mr. McPadden's testimony also established his use of John Crane packing materials for valves and flanges. Other proofs established that Raybestos manufactured John Crane's sheet packing for flanges and supplied asbestos yarn for John Crane's valve packing.

Under either the more lenient new trial standard or the stringent standard applied to judgment as a matter of law, the evidence submitted was sufficient to support to a reasonable jury's determination that the decedents in *Ciletti, Greff,* and *McPadden* were exposed to Raymark's asbestos products.

## C. The Court Properly Admitted the Deposition Testimony of Vance Voorhees

Raymark contends that admission of the deposition testimony of Vance Voorhees ("Voorhees"), a former Executive Vice–President at John Crane, was unfairly prejudicial because Raymark was not given notice of the Voorhees deposition and was not represented by counsel at the deposition. Plaintiffs have produced the cover sheet and appearance page for the Voorhees deposition, which includes Raymark's California attorney as an attendee. Raymark's attorney also conducted cross-examination of Mr. Voorhees. Because Raymark does not dispute or even address this evidence in its reply papers, it seems that Raymark's claim of unfair prejudice must be denied.

## D. Late Delivery of Evidence Requested by the Jury did not Constitute Unfair Prejudice to Raymark and was Cured by Court's Instructions

In its notice of motion, Raymark contends that the untimely delivery of certain evidence requested by the jury during deliberations resulted in unfair prejudice to Raymark and was not cured by the Court's instructions. Again, Raymark does not provide support for this contention in its memorandum of law.

At the end of the day on Tuesday, June 10, 1997, in the midst of deliberations, the jury requested several items of evidence to be sent in, including two tables regarding mineral dust, taken from Exhibits 110 and 103 but containing markings. Raymark's counsel offered to make an unmarked copy of the

tables to be sent into the jury room. The jury reconvened on Friday, June 13, 1997 at 10:00, and the requested evidence was submitted to the jury without objection by counsel. Through inadvertence, the tables were not submitted. The jury returned its verdict in *Ciletti, Greff,* and *McPadden* at 3:00 that afternoon. Immediately following the recording of the verdict, Raymark brought the omission of the evidence to the Court's attention for the first time. The Court summoned the jury and issued the following instruction:

> [Y]ou had requested in one of your notes, I don't have it but it was on Tuesday, you had requested certain tables. We had a discussion about the tables showing mineral dust report. You had requested those tables on Tuesday. There was a discussion with counsel, and we had those for you this morning, but they were not sent in, just were overlooked and not sent in to you this morning. So I am going to provide those tables for you now and give you those two verdicts—I guess I will also give you the Greff verdict—and ask you if any of those matters would create any difference, and if you wish to change your verdict as a result of those matters.

Trial Record, at 2413. The jury then redeliberated, but did not change their verdict.

The initial omission of two tables appears to be harmless error, especially given the range of evidence supporting the jury's verdict. *See e.g., Van Scoy v. Powermatic,* 810 F.Supp. 131, 136 (M.D.Pa.1992) (failure to provide jury with requested evidence prior to verdict did not indicate that verdict was uninformed or not properly considered). Without any demonstration that the resulting verdict against Raymark was a miscarriage of justice, neither judgment as a matter of law nor new trial is warranted. *See Cruz,* 34 F.3d at 1154 (judgment as matter of law granted only if jury's finding resulted from sheer surmise and conjecture); *Smith,* 861 F.2d at 370 (new trial only if enforcement of verdict would be miscarriage of justice).

### E. *Evidence was Sufficient to Sustain Verdicts that Raymark Acted Recklessly and In Concert with other Tortfeasors*

Raymark asserts that the evidence demonstrating that Raymark acted recklessly and in concert with other tortfeasors was insufficient as a matter of law. Section 1601(1) of New York Civil Practice Law & Rules ("N.Y.C.P.L.R.") states that when a plaintiff wins a suit for personal injury against multiple tortfeasors, each tortfeasor who is 50% or less responsible for the plaintiff's injuries is not liable for more than its assessed share of noneconomic damages. This limitation does not apply, however, if the defendant was found to have acted either recklessly, N.Y.C.P.L.R. § 1602(7), or knowingly or intentionally and in concert with others to cause the acts or failures upon which the liability is predicated. N.Y.C.P.L.R. § 1602(11).

■ Concerted action has been explained by the New York Court of Appeals as follows:

> The clearest example of concerted action liability is the drag race. Where two drivers agree to race and one collides with and injures a third party, the other driver is fully responsible for the third party's injuries even though there was no contact between that driver's car and the injured person.

*Bichler v. Eli Lilly & Co.,* 55 N.Y.2d 571, 581, 450 N.Y.S.2d 776, 436 N.E.2d 182 (1982). The illustration demonstrates "no shared intent or agreement to strike the pedestrian, just the concerted improper conduct, sufficient in fact to impose liability even on a vehicle which normally would have a valid proximate causation defense." *In re New York Asbestos Litigation,* ("*Consorti*"), 847 F.Supp. 1086, 1107 (S.D.N.Y.1994), *reversed on other grounds,* 72 F.3d 1003 (2d Cir.1995), *vacated on other grounds,* — U.S. —, 116 S.Ct. 2576, 135 L.Ed.2d 1091 (1996). At the same time, a finding of concerted action "requires more than a supply relationship. It requires jointly undertaken tortious conduct." *In re Brooklyn Navy Yard,* 971 F.2d at 841.

■ The proofs submitted at trial were sufficient to support the jury's finding of concerted action. The Plaintiffs presented evidence that Raymark and Manville at-

tempted to suppress scientific work performed in the 1940's which indicated the risks of asbestos. Evidence was also presented that the Asbestos Textile Institute, ("ATI"), of which Raymark was a member, shared information regarding scientific findings on asbestos-caused diseases and investigated the possibility of taking "concerted action designed to refute the work" of scientists conducting those findings. *See City of New York v. Lead Industries Assoc., Inc.,* 190 A.D.2d 173, 177–78, 597 N.Y.S.2d 698 (1st Dept. 1993) ("Liability attaches equally to the trade association in its own right and to all those who continued their membership without protest.")

 Trial proofs were also sufficient to support the jury's finding of reckless conduct. Reckless conduct occurs when: "the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow and has done so with conscious indifference to the outcome." *In the Matter of New York City Asbestos Litigation,* 89 N.Y.2d 955, 956–57, 655 N.Y.S.2d 855, 678 N.E.2d 467 (1997). In the instant case, evidence was presented that Raymark was selling its products without warnings and promoting the use of asbestos by the United States Navy, while at the same time members of the ATI had acknowledged internally that their employees should be convinced to wear respirators to avoid exposure. This and other evidence provided sufficient support for the jury reasonably to conclude that Raymark knew of the dangers of asbestos and did not adequately protect or warn users, thereby acting in a wanton or reckless manner.

### F. *The Damages Awarded for Pain and Suffering to Ciletti, Greff and McPadden were not Excessive According to New York State Law*

 The jury awarded $2.6 million in *Ciletti,* $2.6 million in *Greff,* and $2.2 million in *McPadden* for damages from pain and suffering endured by the decedents as a result of their mesothelioma. Raymark contends that these damage awards are exces-

sive and must be reduced by the Court. In reviewing the appropriateness of damage awards in diversity cases, federal courts must apply the laws of the State of New York. *Consorti v. Armstrong World Industries, Inc.,* 72 F.3d 1003, 1011–12 (2d Cir. 1995) (citing *Browning–Ferris Indus. v. Kelco Disposal, Inc.,* 492 U.S. 257, 278, 109 S.Ct. 2909, 2921–22, 106 L.Ed.2d 219 (1989)), *vacated, Consorti v. Owens–Corning Fiberglas Corp.,* —— U.S. ——, 116 S.Ct. 2576, 135 L.Ed.2d 1091 (1996), *on remand, Consorti v. Armstrong World Indus., Inc.,* 103 F.3d 2 (2d Cir.1995). Section 5501(c) of New York Civil Practice Law and Rules sets forth the standard for reduction of damage awards at the appellate court level as follows:

> In reviewing a money judgment in an action in which an itemized verdict is required ... in which it is contended that the award is excessive or inadequate ... the appellate division shall determine that an award is excessive or inadequate if it deviates materially from what should be reasonable compensation.

N.Y.C.P.L.R. § 5501(c). Because this standard is explicitly limited to appellate review, New York State trial courts must apply an older standard, which authorizes remittitur only if the damage award "shocked the conscience of the court". It is unclear which of these standards should be adopted by a federal trial court in diversity actions. *Consorti,* 72 F.3d at 1012–13 (noting ambiguity in use of two standards and concluding that federal appellate court must use state appellate standard); *In re Joint Eastern & Southern Dists. Asbestos Lit.,* 798 F.Supp. 925, 936–37 (E. & S.D.N.Y.1992) (hereinafter *Asbestos Litigation* ), *rev'd on other grounds,* 995 F.2d 343 (2d Cir.), *and rev'd on other grounds,* 995 F.2d 346 (2d Cir.1993) (same) David D. Siegel *Supplementary Practice Commentary,* C5501:10 at 25–26 (McKinney's 1995) (observing that state law appellate and trial standards appear to be merging). Adoption of Judge Sifton's reasoning in *Asbestos Litigation* resolves the matter:

> For the purpose of a federal court's remittitur decision, however, the two standards work in harmony. It "shocks the conscience" of a federal judge for a federal

court sitting in diversity to allow a verdict which would necessarily be remitted as a matter of law by a state court using the appropriate state standard.

*Asbestos Litigation,* at 937.

■■■ Raymark proposes calculation of damages by multiplying the duration of mesothelioma for each decedent by $125,000, a monthly multiplier derived from *Dollas, et al.,* 173 Misc.2d 121, 660 N.Y.S.2d 803, 804 (Sup.Ct.1997).[1] However, the *Dollas* court determined its remittitur by "[c]onsidering all the testimony as to the suffering of the respective decedents, including the period of time of such suffering", not by merely calculating the duration of the disease. Justice Helen Freedman initially applied monthly multipliers to recalculate pain and suffering damages. *See, Didner v. Keene Corp.,* N.Y.L.J., Jan. 4, 1991 at 22 (N.Y.Sup.Ct. Dec. 17, 1990), *aff'd,* 188 A.D.2d 15, 593 N.Y.S.2d 238 (1st Dept.1993), *modified,* 82 N.Y.2d 342, 604 N.Y.S.2d 884, 624 N.E.2d 979 (1993). More recently, however, Justice Freedman has retreated from this practice and applied a reasonableness standard to remittitur motions. *Manning v. Georgia Pacific Corporation,* Index No. 102757/94, slip op. (February 3, 1995) (holding that *Didner* "may no longer be controlling" and remitting pain and suffering verdict of $5 million to $4 million). The rationale behind the abandonment of monthly multipliers was articulated by the *Consorti* Court, which discounted the assumption that duration of disease would necessarily increase the amount of damages:

[R]igid application of a monthly multiplier for diseases of significantly different durations is an oversimplification, as well as inconsistent with New York precedent ... it cannot be automatically assumed that suffering which lasts 30 months, from onset of illness to death, should command a verdict three times that of a case where ten months pass from onset to death. In many cases, the degree of average daily suffering will be greater in a case where the disease progresses rapidly.

*Consorti,* 72 F.3d at 1014. In the instant case, while the duration of illness for Ciletti, Greff, and McPadden will be considered, it is not the sole ground for determining the reasonableness of pain and suffering damages. The testimony regarding the degree of suffering endured by each plaintiff must also be factored into a finding of reasonableness.

In deciding remittitur motions, "the best guide for a federal court, if available, would be decisions of the state courts in comparable cases indicating at what point awards become excessive." *Consorti,* 72 F.3d at 1013. The *Consorti* Court surveyed New York state cases and concluded that:

Given the consistent pattern, over a considerable number of cases of death by mesothelioma, of reduction of jury verdicts for pain and suffering by New York courts to figures ranging from approximately $1 million to a maximum of $3 million, we conclude an award exceeding $3.5 million would deviate materially from what is deemed reasonable under New York law.

*Consorti,* 72 F.3d at 1015. Based on the history of remittitur in New York State courts, as well as the testimony regarding the degree and duration of suffering endured by Ciletti, Greff, and McPadden, the jury damage awards do not appear to "deviate materially from what should be reasonable compensation."

### G. *The Court did not Lack Jurisdiction over Raymark in Greff*

Raymark renews its assertion that Raymark had been dismissed from the action brought by Greff by the Honorable Charles Weiner of the Eastern District of Pennsylvania. Previously the Court determined that the consolidation order issued by this Court for Greff effectively joined Raymark to those actions. *Asbestos Litigation,* 963 F.Supp. 247, 254 (S.D.N.Y.1997). Raymark presents no new argument that would alter this determination, thus it remains intact.

---

1. Raymark calculates the duration of each decedent's suffering from date of diagnosis. However, testimony was offered describing the symptoms and anxiety suffered by each decedent in the months prior to diagnosis. There is no valid reason to exclude this pre-diagnosis period from the determination of damages.

**H.** *Raymark was not Unfairly Prejudiced in Ciletti and McPadden by Submission of Punitive Damages to the Jury*

 Raymark asserts that it was unfairly prejudiced by submission of punitive damages in *Ciletti* and *McPadden* to the jury, because the tag-along procedures set forth by the Judicial Panel on Multidistrict Litigation required that the issue of punitive damages be tried in the Eastern District of Pennsylvania. However, because the jury decided not to award punitive damages in either *Ciletti*, *Greff* or *McPadden*, it is unclear what prejudice, unfair or otherwise, Raymark suffered. Without such prejudice, submission of punitive damages to the jury cannot be grounds for judgment as a matter of law.

**I.** *Crane Did Not Act as a "Sophisticated Purchaser" of Raymark's Asbestos Product*

 Raymark contends that it should have been granted a directed verdict regarding Crane's sole liability in *McPadden* and *Strafford*. Raymark asserts that Crane acted as a "sophisticated purchaser", thereby preventing any liability from attaching to Raymark, because Raymark provided asbestos products to Crane which Crane marketed, sold and distributed under its own name.

> The sophisticated intermediary doctrine protects a manufacturer from liability only if the chain of distribution is such that the duty to warn ultimate users should fall on an intermediary in that chain rather than the manufacturer.

*Brooklyn Navy Yard*, 971 F.2d at 838. This defense has been applied to physicians who have failed to warn a patient of a product's danger, *see, e.g., Wolfgruber v. Upjohn Co.*, 72 A.D.2d 59, 423 N.Y.S.2d 95, 97–98 (4th Dept.1979), *aff'd*, 52 N.Y.2d 768, 436 N.Y.S.2d 614, 417 N.E.2d 1002 (1980), or to distributors who have been warned and are far removed from the manufacturer in the chain of distribution, *see e.g., Rivers v. AT & T Technologies, Inc.*, 147 Misc.2d 366, 554 N.Y.S.2d 401, 405 (Sup.Ct.1990).

 The circumstances of this case do not support the "sophisticated intermediary" defense. Raymark's relationship to John Crane more closely fits that of a manufacturer of component parts who supplies those parts to another manufacturer. "A component part manufacturer is liable, either under the theory of negligence or strict liability, if it supplies a defective part which causes an accident." *Feuerverger v. Hobart Corporation*, 738 F.Supp. 76, 78 (S.D.N.Y.1990). Liability attaches to "manufacturers and those involved in placing a product in the stream of commerce ... The latter category would include parties in the direct distribution chain such as distributors, retailers, processors and *makers of component parts.*" *Bickram v. Case I.H.*, 712 F.Supp. 18, 22 (E.D.N.Y.1989) (emphasis added) (interior citations omitted). Here, the jury found that Raymark's reliance upon Crane's duty to warn ultimate users did not exonerate Raymark from liability. This determination is in line with the results reached in other asbestos cases and will not be overturned.

**J.** *The Jury's Award in McPadden for Loss of Parental Guidance Will Be Set Aside*

 The jury awarded $2 million as well as $65,000 per year for the next 20 years in damages in *McPadden* for loss of parental care and guidance from the time of Martin McPadden's death to the present. Raymark correctly contends that this award should be set aside as a matter of law, because New York does not permit a cause of action for loss of parental consortium. *DeAngelis v. Lutheran Medical Center*, 84 A.D.2d 17, 445 N.Y.S.2d 188 (2d Dep't 1981), *aff'd*, 58 N.Y.2d 1053, 462 N.Y.S.2d 626, 449 N.E.2d 406 (N.Y. 1983) (refusing to recognize a cause of action for children's claims after their mother suffered injuries negligently inflicted by third party); *Chaiken v. VV Publishing Corporation*, No. 91 Civ. 2102, 1992 WL 168282 (S.D.N.Y. June 30, 1992). The damage award for loss of parental consortium shall therefore be set aside.

**II.** *Raymark's Motions for Entry of Judgment and to Amend the Judgment*

In its motion for judgment as a matter of law, its motion to amend the judgment, and its motion for entry of judgment, Raymark

asserts that insufficient set-offs were deducted from the judgment for the equitable share of liability assigned by the jury to other tortfeasors.[2]

### A. *The Judgment as Entered Included All Bet–Offs to which Raymark was Entitled*

Set-off in tort actions imposing joint and several liability is governed by § 15–108 of N.Y.Gen. Oblig., which states:

When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.

§ 15–108(a), N.Y.Gen.Oblig. (McKinney's 1989). Pursuant to this provision, Raymark claims set-offs against tortfeasors Armstrong ("Armstrong"), Pittsburgh Corning ("PC"), Owens Corning ("OCF"), Empire Ace ("Empire"), and the Johns–Manville Corporation ("Manville").[3]

#### i. *Manville Trust*

■ Raymark asserts that the *Ciletti* plaintiff has effectively settled with Manville by filing a proof of claim with the Manville

Trust, a fund established in the wake of Manville's discharge in bankruptcy.

■ In general, filing a proof of claim would not appear to constitute settlement under § 15–108. The plaintiff's proffer of a release to the defendant has been called "the defining moment of settlement", *In re Brooklyn Navy Yard,* 971 F.2d at 843, but more recently the New York Court of Appeals has rejected the requirement that a formal release be exchanged for actual payment before the provisions of § 15–108 may be applied:

Such a literal interpretation ignores the realities of trial practice: that settlements made in open court during trial, although fully binding, are seldom formally consummated by the actual payment of the agreed sum in exchange for a release until after the trial has ended. We should not ascribe to the Legislature the intent of imposing the unreasonable requirement that the trial court must hold up the proceedings until all of the settling defendants actually have releases in hand before any effect may be given to the settlements of the defendants under General Obligations Law § 15–108(a).

*In re New York City Asbestos Litigation (Brooklyn Naval Shipyard Cases )*; *Didner v. Keene Corporation,* (*"Didner"*), 82 N.Y.2d 342, 350, 624 N.E.2d 979, 604 N.Y.S.2d 884, 888 (1993). In *Didner,* the fact that the plaintiff and Manville had announced in open court that they had reached a settlement agreement was deemed a settlement for purposes of § 15–108(a). While formal exchange of release and payment may not be necessary to invoke § 15–108, there must be

---

**2.** Although Raymark challenges the set-offs in *Ciletti* and *Greff* in its notice of motion for judgment as a matter of law, its memorandum of law only claims set-offs in *Ciletti.* The motion for entry of judgment similarly relates only to *Ciletti.* The notice of motion for amendment of the judgment challenges the set-offs in all three actions, but it is unaccompanied by any memorandum of law. The lack of detailed support is contrary to Rule 59(e). "Like a motion for a new trial, a motion to alter or amend the judgment must specify the ground on which it is based. In addition, a motion under Rule 59(e) must be in writing." 9A Charles Alan Wright & Arthur R. Miller, § 2817 at 173–74. Under Local Civil

Rule 7.1, Raymark's failure to set forth arguments regarding the set-offs in *Greff* and *McPadden* is sufficient ground to deny its motions as to those actions.

**3.** In *Ciletti,* the jury allocated shares of liability as follows:

| | |
|---|---|
| Raymark | 18% |
| Armstrong | 10% |
| Empire Ace | 10% |
| Johns–Manville | 30% |
| Owens–Corning | 17% |
| Pittsburgh–Corning | 10% |
| Southern Asbestos | 5% |

some indicia of settlement, such as the announcement to the court in *Didner.* The filing of a proof of claim by Mrs. Ciletti does not rise to this level.

In addition, filing of a proof of claim with Manville Trust in particular does not assure settlement. The class action regarding claims against Manville Trust initially established a procedure by which class members could file claims. *In re Joint Eastern & Southern District Asbestos Litigation: In re Johns–Manville Corp: Findley v. Blinken,* (*Findley* ) 129 B.R. 710 (E. & S.D.N.Y.1991), *vacated on other grounds, Findley v. Blinken,* 982 F.2d 721 (2d Cir.1992), *modified,* 993 F.2d 7 (2d Cir.1993). This procedure permitted claimants to negotiate their claims with the trust within delineated bounds and receive payments over time. *Id.,* at 767–70, 856–57. Claimants against the Manville Trust were required to go through the negotiating process. If the process did not lead to settlement, the claimant was entitled to proceed to trial. *Id.* at 843. The structure provided by the Manville Trust for pursuing claims does not automatically confer settlement on any given claimant. "Persons who allege asbestos-related injury [against Manville] have only claims against, not settlements with, the Trust, and retain their right to a jury trial should they forego settlement." *Sealover v. Carey Canada,* 996 F.2d 42, 45 (3d Cir.1993) (finding that where plaintiff has neither received payment from nor engaged in meaningful settlement negotiations with Manville Trust, Manville could not be considered a settled defendant). Although Raymark is not entitled to set-off for Manville's equitable share of liability, it is obviously free to pursue reimbursement under Article 14 of New York Civil Practice Law and Rules.

### ii. *OCF and Empire*

Raymark also claims a set-off is due for the equitable share of liability assigned to OCF and Empire. Mrs. Ciletti and OCF both assert that no settlement has been reached between them. Mrs. Ciletti also states that there is no settlement with Empire. Raymark does not dispute these assertions. Raymark's motion as to OCF and Empire must be denied.

### iii. *Armstrong and PC*

In *Ciletti,* the jury assigned an equitable share of liability of 10% each to Armstrong and PC, the only settling defendants who were allocated a percentage of fault. When applied to the $2,772,000 verdict, that equitable share would amount to a set-off of $554,-400. The total settlements in *Ciletti* amount to $696,500. The judgment entered, $2,075,-500, reflected a set-off of the larger settlement amount, as authorized by § 15–108. Raymark objects that it cannot determine whether the equitable share or settlement amount is the larger because Ciletti has not disclosed the specific settlement amounts reached with Armstrong and Pittsburgh. Raymark's objection appears to cut against its own interests, since the adjustment it seeks would only lead to a set-off which is less than that already granted. The judgment will remain as entered.

### III. *Plaintiff's Motion to Amend the Judgment*

Plaintiffs in *Greff* and *McPadden* have moved to strike the jury's allocation of liability on the grounds that the allocations were not supported by evidence. Raymark has not opposed this motion. The jury determines allocation of liability "in accordance with the relative culpability of each person liable for contribution." N.Y.C.P.L.R. § 1402. This suggests that liability should be apportioned according to relative degrees of fault for the injury, which may include not only the strength of the causal link but also the magnitude of the fault. *Kreppein v. Celotex Corporation,* 969 F.2d 1424, 1426–27 (2d Cir.1992) (citing *Garrett v. Holiday Inns, Inc.,* 58 N.Y.2d 253, 258, 460 N.Y.S.2d 774, 777, 447 N.E.2d 717, 719 (1983)).

Plaintiffs assert that the defendants failed to "produce evidence establishing the specifics of the different products, how often the products were used on the job sites, and the toxicity of those products as they were used." *W.R. Grace & Co.–Conn. v. Dougherty,* 636 So.2d 746, 748 (Fla. 2d DCA 1994) *review denied,* 645 So.2d 457 (1994). Leaving aside the lack of precedental effect offered by a standard derived from a Florida state court,

the defendants Raymark and John Crane offered expert testimony regarding the relative friability and fiber release of each manufacturer's products, as well as expert testimony regarding the pulmonological effects of exposure to each manufacturer's product. This evidence provided sufficient support for the jury's allocation of liability, and that allocation therefore should not be overturned.

### Conclusion

For the reasons set forth above, Raymark's motion for judgment as a matter of law is denied, except as to the award of damages for loss of parental consortium in *McPadden*, which is hereby set aside. Raymark's motions to amend the judgment and for entry of judgment and Plaintiffs' motion to amend the judgment are also denied.

Settle judgment on notice.

It is so ordered.