OPINION OF THE COURT
Louis B. York, J.
This was a personal injury action that, as one of several actions joined together for trial, went to verdict. The plaintiff, a husband and wife, seek damages resulting from the plaintiff, Alfred D’Ulisse, contracting the fatal disease of mesothelioma from exposure to asbestos. After nine weeks of trial, the jury awarded the plaintiffs a total of $25,000,000 in damages.
The damages portion of the verdict was broken down as follows:
Pain and suffering of Alfred D’Ulisse............ $10,000,000
Future pain and suffering of Alfred D’Ulisse. $10,000,000
*947 Loss to Margaret D’Ulisse of her husband’s
services and society up to the present.........................$ 2,500,000
Loss to Margaret D’Ulisse of her husband’s
services and society......................................................$ 2,500,000
Total...............................................................................$25,000,000
Defendant DaimlerChrysler (Chrysler) was one of five companies which the jury found liable for those damages. The jury found that DaimlerChrysler’s share of responsibility for the damages amounted to 10%. However, the jury also found that defendant DaimlerChrysler acted “with reckless disregard for the safety of others.” Under such a finding, pursuant to CPLR 1602 (7), instead of being responsible for only 10% of the verdict, the defendant is liable for the full amount of the verdict. It is that finding of recklessness as well as the size of the verdict that defendant Chrysler challenges.
While Chrysler does not directly challenge the charge given by the court on the issue of recklessness, it claims that the evidence to support such a claim was lacking, relying on Maltese v Westinghouse Elec. Corp. (89 NY2d 955 [1997]), which held that general awareness of the risk of injury to persons exposed to asbestos without the opportunity to warn was insufficient to establish recklessness. Defendant argues that the same rule applies to this plaintiff.
Defendant had to be aware of the danger that plaintiff was exposed to and to have had an opportunity to warn him. Finding that the evidence did not support such a finding, Maltese set aside the finding of recklessness. Therefore, an inquiry into the evidence about the extent of defendant Chrysler’s knowledge of the danger that plaintiff was exposed to and the opportunity it had to warn the plaintiff needs to be undertaken.
The plaintiffs introduced a multitude of examples putting defendant on notice that persons, such as Alfred D’Ulisse, working with friction products were in harm’s way. Such was the ruling of Judge Robert Sweet in In re Asbestos Litig. (986 F Supp 761 [SD NY 1997]). In applying the standard enunciated in Maltese v Westinghouse (supra), the court upheld the jury’s recklessness finding, holding that the defendant “knew of the dangers of asbestos and did not adequately protect or warn users, thereby acting in a wanton or reckless manner.” (986 F Supp 761, 769 [1997].) To the same effect is Hamilton v Garlock, Inc. (96 F Supp 2d 352 [2000]).
*948 There are abundant examples in the record of Chrysler’s knowledge of the lethal nature of asbestos which it knew about, but, nevertheless, according to the record, failed to stamp a warning on its products. For instance, in 1969 a Michigan Department of Public Health report concluded that corrective action was needed at the defendant’s brake manufacturing facilities to protect its workers from excessive release of asbestos fibers from its asbestos-containing products, numerous public reports such as the 1930 Merriwether and C.W. Price report of the effects of asbestos dust on the lungs in the asbestos industry, and the testimony of James Knoll, a Chrysler friction products engineer for 25 years, who was deposed in 1984 and testified about the dangers of excessive levels of dust when employees ground brakes in defendant’s plants or by end user mechanics who ground brake parts before putting them into motor vehicles. In the 1960s, Chrysler installed exhaust and ventilation systems for its own employees to protect them from the hazards of asbestos. In the 1970s, Chrysler established threshold limits to asbestos exposure for its employees that were even lower than the federally mandated threshold limit values. In 1970, Chrysler’s supplier of raw materials advised that “future shipments of our asbestos will bear the following notice on each bag ‘Caution, this bag contains chrysolite asbestos fiber. Persons exposed to this material should use adequate protective devices as inhalation of the materials over long periods of time may be harmful.’ ” For its arc grinding apparatus, Chrysler installed ventilation equipment and required its employees to wear masks. In June 1973, the chairman of the Friction Materials Standard Institute (FMSI), of which Chrysler was a member, emphasized that because of the use of friction products and the way they are handled, labeling of warnings was necessary. With regard to friction products “operations ... in the field could result in excessive exposure of workers or bystanders to airborne asbestos fibers. I have been appalled to learn of the number of instances where this problem has occurred and some of the cases involved people that certainly might have [been] expected to know better.” There were many more instances of the defendant’s knowledge of the hazzards associated with asbestos products before and during the plaintiff’s period of exposure testified to by Dr. Castleman, plaintiffs state-of-the-art expert. Thus, there was sufficient evidence for a jury to reasonably conclude that Chrysler’s conduct was in reckless disregard of the safety of persons like plaintiff who were engaged in the grinding and installation of friction products.
*949 Chrysler’s second major point is that the amount of the award is so excessive as to shock the conscience. In this era of large economic transactions and income to those toiling in the fields of finance, professional sports and entertainment, where large amounts of money being transacted dwarf the award here, the amount awarded plaintiff does not shock this court’s conscience. Nevertheless, it is necessary to determine whether the money judgment is so excessive as to deviate materially from what would be reasonable compensation (Wendell v Supermarkets Gen. Corp., 189 AD2d 1063 [3d Dept 1993]). This entails a comparison of plaintiffs injuries with the injuries of others in similar circumstances (id. at 1065).
Plaintiff was married to his wife Margaret for 51 years. His testimony revealed a deep devotion to his family consisting of his wife, two children and grandchildren. Before the mesothelioma symptoms surfaced, plaintiff testified that he was able to participate in such activities as baseball, handball, paddle ball and dancing, which he can no longer do. With the onset of the symptoms, plaintiff developed a bad cough, fever, tremors and chest pains. In December 2004, plaintiff became a patient at Sloan-Kettering Hospital and had his entire left lung, along with a rib and part of his diaphragm removed. The space resulting from the surgery was filled with gauze. Plaintiff then received chemotherapy and testified that he lost feelings in his legs together with numbness of his thighs and toes. He vomited and had insomnia resulting from the chemotherapy. He had trouble breathing for which he was given oxygen. He testified that he had pain from the incision and he felt as if his “whole stomach was ready to blow up.” He agonized over his condition, wondering when the cancer would spread to his other lung.
Radiation treatment followed the chemotherapy. He couldn’t swallow and choked when he tried to eat. His skin was so itchy and burnt red that he couldn’t put his clothes on. Mr. D’Ulisse suffered from severe constipation and rectal bleeding. He is despondent over his inability to care for his wife or to currently engage in sexual activities. Plaintiff stated that “I am on death row for a crime I didn’t commit.” He states that he is aware that he is going to suffer a horrible death.
D’Ulisse’s coplaintiff wife, in addition to corroborating much of his testimony, testified to his assisting her with household chores and to the loss of sexual companionship.
In its brief, the defendant cited a number of mesothelioma plaintiffs whose judge-reduced awards ranged from $600,000 in *950 Matter of New York City Asbestos Litig. (173 Misc 2d 121 [Sup Ct, NY County 1997]) to $5.2 million in Falloon v Westinghouse Elec. Corp. (Sup Ct, NY County, 1995, Index No. 108931/95). However, the size of the verdict in Matter of New York City Asbestos Litig. was reduced not because it was excessive, but because the defendant was only 50% liable. So the amount of damages was actually $1.2 million. In Falloon, the damages award was reduced from $14.6 million to $5.2 million. In none of the cases cited by defendant in which the trial court reduced the amount of the award was there either a finding of recklessness or a finding of recklessness upheld.
The plaintiffs have submitted cases of asbestos recoveries involving very substantial recoveries. In Croteau v AC&S (Sup Ct, NY County, Index No. 118793/01), the jury award was $43,100,000. In Brown v AC&S (Sup Ct, NY County, Index No. 120595/00), the court awarded $53,000,000. In Falloon (supra), the award was $14.6 million before the court reduced it. In Consorti v Armstrong World Indus., Inc. (1993 WL 1156122 [SD NY 1993]) the award was $18,000,000, although subsequently reduced to $5,000,000.
The defendant has asked the court to reduce the award of co-plaintiff Margaret D’Ulisse to between $100,000 and $200,000. However, there is no discussion of why the award should be reduced from the $2.5 million awarded for past and $2.5 minion for future loss of services and society, citing no cases in which awards were made for similar injuries. Plaintiffs, on the other hand, have cited Pescatore v Pan Am World Airways (97 F3d 1 [2d Cir 1996]) which affirmed an award of $19,000,000 for loss of past and future services and society although approximately $5,000,000 was for accrued interest. Plaintiffs also cite Harvey v Mazal Am. Partners (165 AD2d 242 [1st Dept 1991], revd on other grounds 79 NY2d 218 [1992]). However, there the Court only affirmed a $900,000 loss of consortium award.
Determining what would be reasonable compensation is particularly difficult in this action. Despite defendant’s attempt to reduce the verdict to an arithmetic finding of pain and suffering per year, New York adheres to the totality of circumstances approach (Jones v Simeone, 112 AD2d 772 [4th Dept 1985]). This entails a subjective evaluation of the severity and duration of the suffering and the apprehension of impending death (id.). In Juiditta v Bethlehem Steel Corp. (75 AD2d 126 [4th Dept 1980]), the award of $70,000 for pain and suffering in 1980, where the fatally injured deceased lived for about one hour af *951 ter sustaining the injury, was affirmed. How does the plaintiffs three years of current and continuing pain, suffering and anguish, 27 years after Juiditta, stack up against that?
While knowledge of prior court affirmances of jury verdicts is useful, so is the verdicts of juries in similar situations, who, as a group, should most accurately reflect the collective wisdom of the community. Accordingly, their verdict, absent the acts of a runaway jury, should be given great deference (Santalucia v County of Broome, 228 AD2d 895 [3d Dept 1996]; Matter of Michael RR., 188 Misc 2d 742 [2001]), especially where the losses are of such an intangible nature as pain and suffering (Reed v City of New York, 304 AD2d 1, 7 [1st Dept 2003]).
In their submissions, both sides have failed to compare the awards of the cases they cite with the degree and length of the suffering of both plaintiffs. Given that failure, in evaluating the length and degree of suffering, the evidence of Mr. D’Ulisse’s health before the onset of the symptoms of the disease, the disease’s symptoms, and the activities that he could no longer perform, the court finds that the plaintiffs have cited a number of verdicts that this verdict does not deviate from. It is also noted that the jury exercised great care in coming to this verdict. This is brought home by the observation that in the companion case that was tried jointly before the same jury, the verdict was in favor of the defendant. Thus, there is no basis to reduce the verdict in this case.
The court has considered defendant’s remaining arguments and finds them to be without merit.
Accordingly, it is ordered that the prong of this motion to vacate the jury’s finding of reckless disregard for the safety of others is denied, and it is further ordered that the prong of this motion to order that the amount of the verdict should be reduced or the verdict on damages be set aside and a new trial ordered is denied.