■ DOMENICO D'ANGELO, as Executor of JANE D'ANGELO, Deceased, Respondent, v BLUE CROSS AND BLUE SHIELD OF CENTRAL NEW YORK, Appellant. [676 NYS2d 315] —Cardona, P. J. Appeal from a judgment of the Supreme Court (Monserrate, J.), entered October 2, 1997 in Tioga County, upon a verdict rendered in favor of plaintiff.

Plaintiff's wife (hereinafter decedent) was diagnosed with a brain tumor in 1987. In October 1992, she was admitted to the hospital for a craniotomy to remove the tumor. Following surgery, she remained in the rehabilitative unit of the hospital for approximately one month after which she was transferred to a skilled nursing facility. On December 14, 1992, she was transferred to another skilled nursing facility, the Tioga Nursing Facility (hereinafter Tioga), where she remained until her death in February 1995.

---

* We note, however, that this figure coincides with the amount claimed by plaintiff in her bill of particulars.

During the time she resided at Tioga, decedent was covered by a policy of health insurance issued by defendant. Defendant paid for all medical expenses incurred through February 1993, but denied coverage for expenses incurred thereafter on the basis of a policy exclusion denying coverage for "inactive care" defined as care "which is mainly custodial or a rest cure" and is not "medically necessary". Plaintiff commenced this breach of contract action to recover the unreimbursed expenses. Following a jury trial, a verdict was rendered in favor of plaintiff. Defendant moved to set aside the verdict on the ground, *inter alia*, that it was not supported by legally sufficient evidence. Supreme Court denied the motion and awarded judgment in the amount of $127,369.97. Defendant appeals.

Initially, defendant argues that Supreme Court improperly instructed the jury on their responsibility to interpret the contract, specifically the terms "medically necessary" and "mainly custodial", insofar as the court stated the following: "If the terms at issue, this holds true for both the medically necessary terminology and the custodial care terminology, if the terms at issue are ambiguous, in other words, if they are unclear, indefinite, uncertain or vague, then you must construe them against the party that drafted the contract, which of course in this case is [defendant]." While we agree that the issue of whether a contract provision is ambiguous is a question of law for the court to decide in the first instance (*see, Matter of Wallace v 600 Partners Co.*, 86 NY2d 543, 548; *Primavera v Rose & Kiernan*, 248 AD2d 842, 843), we nevertheless conclude, on the record before us, that any error Supreme Court made in instructing the jury on this issue does not require that the verdict be set aside. In our opinion, the terms "medically necessary" and "mainly custodial" are ambiguous. This is evidenced by the parties' reliance upon different medical evidence to establish the meaning of these terms. We also note that the terms are not defined in the policy. Considering our finding that the terms are ambiguous and in light of the latitude Supreme Court afforded defendant in submitting extrinsic evidence, consisting of policy guidelines and testimony, to aid the jury in construing these terms (*see, State of New York v Home Indem. Co.*, 66 NY2d 669, 671), we do not find that defendant was prejudiced by the charge. Therefore, the jury's verdict should not be disturbed on this basis.

Defendant further contends that the jury's verdict is not supported by legally sufficient evidence and, alternatively, that it is against the weight of the evidence. In order to find that a jury's verdict is not supported by legally sufficient evidence,

"[i]t is necessary to first conclude that there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial" (*Cohen v Hallmark Cards*, 45 NY2d 493, 499). In contrast, in order to find that a jury's verdict is against the weight of the evidence, it must appear that the evidence "so preponderate[s] in favor of defendant that the verdict could not have been reached on any fair interpretation of the evidence" (*MacNamara-Carroll, Inc. v Delaney*, 244 AD2d 817, 820, *lv dismissed and denied* 91 NY2d 1001; *see, Lolik v Big V Supermarkets*, 86 NY2d 744, 745). Based upon our review of the record, we find that the verdict withstands scrutiny under both standards.

In reaching its verdict, the jury found that plaintiff had met his burden of demonstrating that decedent's stay at Tioga after March 1, 1993 was "medically necessary" rather than "mainly custodial". Conflicting testimony was presented on these issues. Joseph Blood, the physician who treated decedent while she was at Tioga, testified that after physical therapy was discontinued in July 1993, decedent was no longer in need of skilled nursing care. He acknowledged, however, that decedent suffered from fluid build-up in the brain which continued throughout her stay at Tioga. Blood also acknowledged that he did not discharge her because her home environment was unsuitable for the level of care she required and that she needed 24-hour care. John Nemunaitis, a physician specializing in physical medicine and rehabilitation, likewise testified that after February 1993 it was no longer medically necessary for decedent to reside in a skilled nursing facility. He stated that decedent could have been cared for at home with certain support services.

Saeed Bajwa, the neurosurgeon who treated decedent from her initial diagnosis in 1987, testified that decedent showed slow improvement after her surgery in October 1992 and that he recommended that she go to a skilled nursing facility to further the rehabilitative process. He indicated that, although her condition began to decline in March 1993, he was of the opinion that she still required physical therapy and believed that the discontinuance of the therapy played a major role in her subsequent deterioration. Bajwa stated that decedent required monitoring since she was on various medications, with potentially lethal side effects, which changed during the course of her stay at Tioga. He also indicated that she suffered from intercranial pressure caused by fluid build-up in the brain which could cause death if not monitored by medical profes-

sionals. He opined that decedent's treatment at Tioga was medically necessary and that at no time was it inappropriate for her to be in a skilled nursing facility. In our view, the foregoing testimony provides ample support for the jury's verdict and, therefore, we decline to find either that it is not supported by sufficient evidence or against the weight of the evidence.

Crew III, Yesawich Jr., Spain and Graffeo, JJ., concur. Ordered that the judgment is affirmed, with costs.