■ MICHAEL JOCOY et al., as Parents and Guardians of CORTNEY JOCOY, an Infant, Appellants, v BLUE CROSS BLUE SHIELD OF CENTRAL NEW YORK, Respondent. [687 NYS2d 784] —Peters, J. Appeal from a judgment of the Supreme Court (Ellison, J.), entered December 31, 1997 in Chemung County, upon a verdict rendered in favor of defendant.

In February 1991, plaintiff Michael Jocoy (hereinafter plaintiff) commenced treatment for his daughter, Cortney (born in 1977), with Jeffrey Donner, a licensed clinical psychologist, as a result of her disruptive behavior at school, excessive alcohol consumption and abuse of over-the-counter drugs

requiring repeated emergency room treatment at a local hospital. Upon treating Cortney as an outpatient on a biweekly basis, Donner opined that she had extreme difficulty in controlling her behavior, resulting in experimentation with drugs and the consumption of substantial amounts of alcohol. She further exhibited signs of depression, engaging in "suicidal thoughts". The administration of various intelligence and achievement tests confirmed that she was functioning in the borderline range, accounting for her escalated frustration with school.

During the term of her outpatient treatment, Cortney became increasingly out of control on a fairly regular basis, resulting in her inconsistent attendance at meetings with Donner. By February 1992, Donner opined that although she would intermittently respond to therapy, Cortney needed inpatient hospitalization with a facility adept at dealing with both her alcohol and psychiatric problems since she was increasingly placing herself in dangerous situations as she became more depressed. Donner explained that she regularly engaged in suicidal ideation and pursued abusive relationships with older men, all the while continuing with excessive alcohol consumption. Upon his referral of her to Parkridge Chemical Dependency Center, plaintiff took Cortney to the facility that day. At the conclusion of an hour-long intake meeting, Joan Close, a registered nurse and administrator, recommended Meadows Psychiatric Center in Pennsylvania since Parkridge could not adequately address Cortney's drug/alcohol needs because they were compounded by her need for psychiatric treatment. Upon Close's recommendation, Cortney was transported to Meadows that day.

It is undisputed that upon plaintiff's questioning regarding his insurance coverage for Cortney's placement at Meadows, an administrator called defendant to verify coverage. In his presence, the administrator was informed that coverage was available and that no precertification was necessary. Upon this basis, plaintiff agreed to Cortney's inpatient admission to the facility, where she remained for 30 days and was treated by William Hylbert.

As a result of her hospitalization at Meadows, Cortney's bills totaled $20,069.75. After submitting the bills to defendant for payment, plaintiff was advised by letter in July 1992 that coverage would be denied upon defendant's determination that the services performed were not "medically necessary". Plaintiff thereafter contacted both Donner and Hylbert requesting the furnishing of additional documentation to defendant for its reconsideration. Despite two letters from Hylbert and one from

Donner, defendant remained steadfast in its denial of payment. This action was thereafter commenced with plaintiffs contending that defendant's refusal to pay constituted a breach of contract. Upon the jury's determination that Cortney's treatment was not "medically necessary", the court dismissed the complaint, prompting this appeal.

We note, preliminarily, that we must reject plaintiffs' contention that the definition of the term "medically necessary" in the insurance contract was ambiguous, thus warranting a construction of such term in their favor. Having failed to object to Supreme Court's definition of such term in the jury charge or request that the jury be charged to construe any such ambiguity in the contract against the defendant, we are now precluded from reviewing the definition as devised by the court (*see, Leonard v Unisys Corp.*, 238 AD2d 747, 749).

In our evaluation of whether the jury's verdict was against the weight of the evidence, we note that to be successful, it must be established that " ' "the evidence [adduced at trial] so preponderate[d] in favor of the [plaintiffs] that [the verdict] could not have been reached on any fair interpretation of the evidence" ' " (*Lolik v Big V Supermarkets*, 86 NY2d 744, 746, quoting *Moffatt v Moffatt*, 86 AD2d 864, *affd* 62 NY2d 875; *see, D'Angelo v Blue Cross & Blue Shield*, 252 AD2d 886). Upon our review, we do not find that the verdict can be set aside on that basis.

Donner testified as to all of the previously detailed reasons supporting his referral for in-patient care. While Donner opined that medication was indicated to treat Cortney's depression, he never referred her to a psychiatrist who could further assess her both psychologically and medically. Due to his belief that Cortney was certain to mix any such medication with excessive alcohol consumption, he maintained that inpatient hospitalization was the only available safe course of treatment. Close confirmed Donner's assessment of Cortney's alcohol dependence, testifying that Cortney exhibited a "maladaptive pattern of alcohol abuse" as well signs of depression, an eating disorder and suicidal gestures. Upon her assessment, Close recommended the dual treatment offered by Meadows. On cross-examination, however, Close admitted that her observations were based upon a one-hour meeting with Cortney and a 15-minute meeting with plaintiff. Although the medical records of Donner, Parkridge and Meadows, including all of their interdisciplinary progress evaluations, were admitted into evidence, plaintiffs failed to proffer the testimony of any individual who was responsible for Cortney's admission to Meadows.

Defendant, however, presented the testimony of Miriam Mazor, a board certified psychiatrist and clinical instructor at Harvard Medical School. Based upon her peer review of the case, a normally accepted practice in the field of psychiatry as well as all other medical fields and that with which she had substantial experience, Mazor opined that from a psychiatric standpoint, inpatient care is indicated for "safety, stabilization and medication adjustment in a patient who is acutely ill". Upon her review of the medical records and all appeal letters, she found no substantiation to support the contentions that Cortney was a suicide risk or had a physiological dependence upon alcohol. Contrary to the testimony presented by plaintiffs, she opined that treatment with antidepressants would have been appropriate for Cortney on an outpatient basis, regardless of her alcohol consumption, since such medication could actually reduce her craving for alcohol. In dealing with adolescents like Cortney, she testified that a wide range of treatment options were available between intermittent bimonthly outpatient sessions with a psychologist and inpatient psychiatric hospitalization. She further testified that long-term outpatient care in the person's own community had proven to be much more effective than short-term inpatient programs like Meadows which reveal a high rate of relapse. Discounting any contention by Donner that the absence of such programs in Cortney's community necessitated the referral, Mazor explained that it would be more appropriate to tailor a program to meet her needs utilizing local resources rather than sending her outside of her own community and the support system therein. Mazor was forced to conclude, during cross-examination, that she felt that Donner was incompetent for his failure to refer Courtney to a psychiatrist prior to his referral for inpatient hospitalization. Characterizing the care rendered to Cortney at Meadows as an extreme reaction and not medically necessary, she justified defendant's denial of coverage.

As conflicting evidence was presented on the issue of whether Cortney's inpatient treatment was medically necessary, the jury's reliance upon the testimony of Mazor, the only medical doctor testifying at trial, constituted a fair interpretation of the evidence presented—it being within their province to assess the credibility of the witnesses and resolve conflicts of fact (see, Moxley v Givens, 255 AD2d 632; Salvato v CRP Sanitation, 228 AD2d 774). Further considering whether the verdict was supported by legally sufficient evidence and assessing, as we must, whether "there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence

presented at trial" (*Cohen v Hallmark Cards*, 45 NY2d 493, 499), we again find no error.

Mercure, J. P., Spain, Carpinello and Graffeo, JJ., concur. Ordered that the judgment is affirmed, with costs.