OPINION OF THE COURT
Thomas D. Nolan, Jr., J.
The motion of the State Commissioner of Mental Health (hereinafter Commissioner) to set aside a jury verdict after a rehearing held pursuant to CPL 330.20 is denied without costs.
*743 Following this rehearing, the jury rendered a verdict finding unanimously that Michael RR. suffered from a mental illness, but finding unanimously that he does not pose a real threat of substantial physical harm to himself or others. The jury never reached the question whether Mr. RR.’s judgment is so impaired that he is unable to understand the need for continued care and treatment as an inpatient. Thereafter, on February 21, 2001 an order of release and an order of conditions were executed, and, upon application of the Commissioner, the release order was stayed pending a determination of the within motion.
Approximately 17 years ago, Mr. RR. committed a homicide for which he was found not responsible by reason of mental disease or defect, following which he was determined to suffer a “dangerous mental disorder” under CPL 330.20 (1) (c) and was confined to a secure facility until January 1989, when, having been found to no longer suffer from a dangerous mental disorder, he was transferred to the Capital District Psychiatric Center (hereinafter CDPC), a nonsecure facility, where he remains.
“A court may set aside a jury verdict and grant judgment as a matter of law to the losing party only where there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [persons] to the conclusion reached by the jury on the basis of the evidence presented at trial.” (Brewster v Prince Apts., 264 AD2d 611, 612 [1st Dept 1999], quoting Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978].) Stated another way, “the question is * * * whether the evidence on the whole so preponderates in favor of the losing party that the verdict could not have been reached on any fair interpretation of the evidence.” (Santalucia v County of Broome, 228 AD2d 895, 896 [3d Dept 1996]; see also, Lolik v Big V Supermarkets, 86 NY2d 744 [1995]; King v Jordan, 265 AD2d 619 [3d Dept 1999]; Jocoy v Blue Cross Blue Shield, 260 AD2d 777 [3d Dept 1999], lv denied 93 NY2d 812 [1999].) “Fundamentally, when faced with conflicting evidence it is a jury’s obligation to assess credibility and great deference is given to a jury’s interpretation of evidence that has sufficient support in the record, even if there is credible evidence to the contrary.” (Jaquay v Avery, 244 AD2d 730, 731 [3d Dept 1997].)
The Commissioner offered testimony of two experts, each a psychiatrist. The first opined that Mr. RR. suffers from schizophrenia of the paranoid type. The other opined that he suffers from a delusional disorder of the persecutorial type. Both *744 opined that he poses a danger to others in that he continues to suffer from delusions and that he had acted upon the delusion or, at least, his belief, that his uncle, the homicide victim, had sodomized him when Mr. RR. was unconscious. The respondent testified. The respondent did not present any expert testimony. Obviously, the jury accepted the experts’ opinions that Mr. RR. suffers from a mental illness, but rejected their opinions that he presently poses a real threat of substantial physical harm to others.
Before the jury was proof that during his approximately 17 years of confinement, first in a secure facility and then in a nonsecure facility, Mr. RR. exhibited no signs of violence except on two occasions. The first consisted of Mr. RR.’s choking a psychotic roommate at CDPC when the roommate jumped on top of Mr. RR. while Mr. RR. was in Mr. RR.’s bed. The second consisted of shoving an aide or a staff member at CDPC when CDPC staff discovered Mr. RR. and his paramour engaged in amorous behavior. Also, before the jury was proof that Mr. RR. had received escorted furloughs during the years 1991 to 1993, then unescorted furloughs from 1993 to 1995, when his furlough privileges were expanded to allow overnight visits with family, and part-time employment at the Port of Albany, to and from which he traveled on his own. (These privileges were revoked in 1995 when Mr. RR. returned to CDPC after his curfew. Mr. RR.’s excuse was that he had overslept at his girlfriend’s residence.) Lastly, the jury had the benefit of Mr. RR.’s trial testimony.
The jury certainly reasonably concluded that Mr. RR. continues to suffer from a mental illness in that he continues to suffer from delusions that he is the object and recipient of physical harm and sexual aggression by members of the CDPC staff, and continues to harbor the belief that he is the subject of a conspiracy of the mental health system and the judicial system to continue his confinement. On the other hand, the jury could reasonably have concluded, that he no longer poses a present danger to himself or others based upon the history of lack of aggressive behavior other than the two enumerated incidents over the last 17 years, based upon his behavior during furloughs, and based upon the fact he has not acted again upon his delusions in a violent manner, notwithstanding the experts’ opinions that he might still act violently upon these delusions.
Since there was evidence before the jury from which the jury could reasonably have concluded that Mr. RR. does not pose a *745 real threat of substantial physical harm to himself or others, the application of the Commissioner for an order setting aside the verdict is denied without costs.