Erlichman v Encompass Ins. Co. (2004 NY Slip Op 50599(U))

[*1]

Erlichman v Encompass Ins. Co.

2004 NY Slip Op 50599(U)

Decided on June 18, 2004

Supreme Court, Nassau County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 18, 2004

Supreme Court, Nassau County
BEVERLY KESSLER ERLICHMAN and ALAN ERLICHMAN, Plaintiffs,
 against
ENCOMPASS INSURANCE COMPANY f/k/a CONTINENTAL INSURANCE COMPANY, Defendants.
13432-02

COUNSEL FOR PLAINTIFF: Ira Levine, Esq., 543 Broadway, Massapequa, New York 11758. COUNSEL FOR DEFENDANT: Feldman, Rudy, Kirby & Farquharson, P.C., 1400 Old Country Road - Suite 301, Westbury, New York 11590-5134

Leonard B. Austin, J.
Defendant Encompass Insurance Company f/k/a Continental Insurance Company ("Encompass") moves for summary judgment dismissing this action.
BACKGROUND
Plaintiffs Beverly Kessler Erlichman ("Beverly') and Alan Erlichman ("Alan") (collectively "Erlichman") own a home in Cedarhurst. On July 11, 1999, their home was burglarized. A Renoir drawing was stolen. Erlichman immediately report the burglary to the police.
At the time of the burglary, Erlichman maintained a homeowners insurance policy with [*2]Continental Insurance Company ("Continental") which had been procured through a broker, The Lewis Agency ("Lewis Agency"). This policy provided Erlichman with insurance coverage for losses sustained as a result of theft.
On July 12, 1999, Beverly called the Lewis Agency to give notice of the burglary. The Lewis Agency advised Beverly to contact Continental directly. On the same day, Beverly spoke with Judy Brown ("Brown"), a representative of CNA Companies ("CNA"), the parent company of Continental. CNA is now known as Encompass. During the course of the July 12, 1999 telephone conversation, Beverly advised Brown that the Renoir drawing had been stolen.
By letter dated July 16, 1999, Brown forwarded to Erlichman a Notice of Loss form. The Notice of Loss form was to be completed by the assured and returned to CNA. The Notice of Loss form requests information regarding whether the theft was reported to the police, a brief statement regarding the incident, a description of the stolen item, the date upon which the item was acquired and the item's acquisition and
replacement cost. The Notice of Loss form was completed by Erlichman and returned to CNA on or about August 25, 1999.
Several months later, Alan was contacted by Sam Levien ("Levien") who indicated that he was an art expert retained by Encompass in connection with the claim. Some time thereafter, Alan and Levien met at Alan's place of business.
Beverly also spoke with Levien on several occasions. During a conversation which took place in July 2000, Levien is alleged to have told Beverly that he was working on the claim and that he was preparing his report to the insurance company in which he was recommending that the claim be paid. Despite this assurance from Levien, the claim was not paid.
During the summer of 2001, Alan and Beverly each called Levien. Levien assured Alan and Beverly that the claim was being handled properly and that the delay in final resolution of the claim was a result of the complicated nature of establishing a value of art work.
In late 2001, Beverly called Brown on several occasions. During each of these conversations, Brown assured Beverly that the she was in touch with Levien, that the claim was being reviewed and that, if Erlichman would be patient, the claim would be satisfactorily resolved.
Due to Beverly's growing dissatisfaction with the manner in which the claim was being handled, in late 2001, she called the Lewis Agency and spoke with Christine Varisco. Beverly received a return call from Ms. Varisco several days later and was advised that someone from the Lewis Agency had spoken with Brown who assured the representative of the Lewis Agency that the claim was being reviewed and would be paid.
By the summer of 2002, Encompass had still not paid or denied the claim. On August 14, 2002, Erlichman commenced this action seeking to recover the value of the stolen Renoir drawing.
In its answer, Encompass asserts that the action is barred by the contractual statute of limitations which is contained in Paragraph 6 of the policy. This policy provision provides:6. Suits Against Us
No action can be brought unless the policy provisions have been complied with and the action is started:
a. Within two years after the date of loss; but
[*3]
b. Not until 30 days after the proof of loss has been filed and the amount of the loss has been determined.
However, the two year period is extended by the number of days between the date the proof of loss is submitted and the date the claim is submitted in whole or in part.
Encompass asserts the action is time barred by this policy provision and should be dismissed.
DISCUSSION
The relationship between an insurance carrier and a policyholder is one in contract. See, Rabouin v. Metropolitan Life Ins. Co., 182 Misc.2d 632 (Sup. Ct. NY Co., 1999), aff'd., 282 A.d.2d 381 (1st Dept., 2001). The parties to a contract may contractually agree to shorten the limitations period during which an action may be commenced. John J. Kassner & Co., Inc. v. City of New York, 46 N.Y.2d 544 (1979). See also, Certified Fence Corp. v. Felix Industries, Inc., 260 A.D.2d 338 (2nd Dept., 1999).
Encompass claims that paragraph 6 of the homeowner's policy required Erlichman to commence this action within two years of the date of loss. The loss took place on July 11, 1999. The action was not commenced until August 14, 2002. Since more than two years elapsed since the date of the loss and the commencement of this action, Encompass asserts that the action is time barred and should be dismissed.
Erlichman asserts that Encompass should be equitably estopped from asserting a statute of limitations defense or that the defense has been waived. Alternatively, they assert that these policy provisions are ambiguous and that the time to commence the action has not yet accrued.
Evidence that the insurance carrier and the insured have been in communication or have been engaged in settlement negotiations either before or after the expiration of the statute of limitations contained in the policy is insufficient to prove waiver or estoppel. Gilbert Frank Corp. v. Federal Ins. Co., 70 N.Y.2d 966 (1988). See also, Saxena v. New York Property Ins. Underwriting Assoc., 232 A.D.2d 622 (2nd Dept., 1996).
Waiver is the intentional relinquishment of a known right. Gilbert Frank Corp. v. 
Federal Ins. Co., supra. The plaintiff must establish that defendant manifested a clear intent to waive the contractual limitations period. Gilbert Frank Corp. v. Federal Ins. Co., supra; and Saxena v. New York Property Ins. Underwriting Assoc., supra. No such proof has been presented on this motion.
In order to establish an estoppel, plaintiff must establish that as a result of defendants actions or representations that it was lulled into sleeping on its rights under the insurance contract. Affordable Auto Repair, Inc. v. Travelers Indemnity Co., 292 A.D.2d 477 (2nd Dept., 2002). The insurance carrier may be estopped from asserting the Statute of Limitations as a defense to the claim where the insurance company induced the insured through fraud, misrepresentation or deception from timely commencing an action. Simcuski v. Saeli, 44 N.Y.2d 442 (1978). See also, Hart v. Marriott International, Inc., 304 A.D.2d 1057 (3rd Dept., 2003); and Campbell v. Cabot, 189 A.D.2d 746 (2nd Dept., 1993).
In this case, plaintiffs have failed to allege facts sufficient to establish any question of fact requiring a trial on the issue of either waiver or estoppel. Kessler did not make any inquiry with Encompass regarding the status of the claim between July 2000 when Levien advised [*4]Beverly that he was recommending that the claim be paid and July 2001.
Alan is an auctioneer of art and antiques. In July 2001, after Kessler did not receive a satisfactory response from Levien regarding the status of the claim, Alan
learned that Levien was not an art appraiser. Despite this, Kessler did not commence the action at that time.
In late 2001, Beverly called Brown five or six times and was again advised that the claim was "being administered."
After receiving this response from Brown, Beverly called the Lewis Agency. A representative of Lewis spoke with Brown and then advised Beverly that the claim was being reviewed and would be paid.
These communications are nothing more than communications regarding the possible settlement of the claim.When coupled with the other factors established by the parties, any possible inference that Erlichman was lulled by Encompass into sleeping on their rights or that they were induced by fraud, misrepresentation or deception into not commencing an action is negated. Encompass is not estopped from asserting the contractual limitation period.
There is no evidence in the record from which the Court could find that Encompass evidenced any intent to waive the contractual limitation period.
An insurance policy is a contract which will be interpreted in accordance with the normal rules of contract interpretation. State of New York v. Home Indemnity Co., 66 N.Y.2d 669 (1985). The court will determine as a matter of law the rights and obligations of the parties of an insurance contract based upon the language of the policy, and unambiguous provisions will be given their plain meaning. Sanabria v. American Home Assurance Co., 68 N.Y.2d 866 (1986); and Bassuk Bros, Inc. v. Utica First Ins. Co., 1 A.D.3rd 470 (2nd Dept., 2003). In interpreting an insurance policy to determine if it has any ambiguity, the court is to focus on the "...reasonable expectations of the average insured upon reading the policy (citation omitted) and employing common speech (citation omitted)." Mostow v. State Farm Ins. Co., 88 N.Y.2d 321, 326-327 (1996). See also, Ace Wire & Cable Co. v. Aetna Cas. & Sur. Co., 60 N.Y.2d 390 (1983).
Ambiguity exists where the language of the policy is "...susceptible of two reasonable interpretations." State of New York v. Home Indem. Co., supra at 661. See also, MDW Enterprises, Inc. v. CNA Ins. Co., 4 A.D. 3d 338 (2nd Dept., 2004). Ambiguous provisions in an insurance policy are to be construed in favor of the insured. Matter of Metropolitan Prop. & Casualty Ins. Co. v. Mancuso, 93, N.Y. 2d 487, 497 (1999) where the Court of Appeals held that, "When an insurance carrier drafts an ambiguously worded provision and attempts to limit its liability by relying on it, we will construe the language against the carrier (citations omitted).
In this case, the provision in question paragraph 6 is subject to at least two reasonable interpretations, the one proposed by Encompass and the one proposed by Erlichman.
Encompass asserts that paragraph 6 provides that the claim must be commenced within two years of the date of loss. Since the action was not commenced within two years of the date of loss, the action is time barred and should be dismissed. However, such a reading of would negate paragraph 6 (b) which tolls the limitation period "until 30 days after the proof of loss has been filed and the amount of the loss has been determined. (Emphasis added.) To date, there has been no determination of the amout of the loss. Levien has not yet submitted his report as to the value of the stolen Renoir drawing. In the absence of such determination, it would appear that [*5]Plaintiffs' time to commence this action has not even ripened. However, since no one has contended that this action may be premature, such issue shall not be considered.
In addition, the last clause in paragraph 6 extends the two year period "by the number of days between the date the proof of loss is submitted and the date the claim is submitted." To ignore this clause renders it meaningless. The court should not adopt an interpretation of a contract which would leave any provisions of a contract without force and effect. Hudson Iron Works, Inc. v. Beys Specialty Contracting, Inc., 262 A.D.2d 360 (2nd Dept., 1999); and Gonzalez v. Norrito, 256 A.D.2d 440 (2nd Dept., 1998).
The requirement that the policyholder file a proof of loss and await a determination of the amount of loss can reasonable be read as a condition precedent to the commencement of an action against the carrier by the insured. The policy requires both a filing of a proof of loss and a determination of the amount of the loss before an action can be commenced. The terms are used conjunctively meaning that both events must occur before an action can be commenced.
The term " amount of loss has been determined" is not defined by the policy. The average policyholder could give this provision a "common speech" interpretation that the policyholder cannot commence an action until the insurance company has made an offer to settle or has denied the claim. Since Encompass has done neither, a condition precedent to the commencement of an action has not occurred and the time in which to commence an action has not yet run. To hold otherwise would condone Encompass' leaving Plaintiffs in limbo, despite their timely claim and regular followup, so that it could later preclude recovery under its shorter contractual limitation period.
The policy also contains the provision that the time in which to commence an action is extended by the "...number of days between the date the proof of loss is submitted and the date the claim is submitted in whole or in part." The term "the claim is submitted in whole or in part" is not defined by the policy. The average policyholder could read this provision to mean that the time to commence an action is extended until the adjuster or appraiser has submitted a report the carrier so that the carrier can evaluate the claim. Since there is no evidence in the record that this has occurred, the policyholder could have reasonably concluded that its time to commence an action has not yet run.
Both provisions are designed to prevent the policyholder from commencing an action against the carrier until the carrier has had the opportunity to review and consider the claim and decide on whether to settle or deny the claim.
The policy provisions are subject to at least two different, reasonable interpretations. Therefore, the Court will have to consider extrinsic evidence to determine the meaning of these provisions. Summary judgment is, therefore, inappropriate. See, Hartford Acc. & Ind. Co. v. Wesolowski, 33 N.Y.2d 169 (1973). See also, D'Angelo v. Blue Cross and Clue Shield of Central New York, 252 A.D.2d 886 (3rd Dept., 1998); and Primavera v. Rose & Kiernan, Inc., 248 A.D.2d 842 (3rd Dept., 1998).
Accordingly,it is,
ORDERED, that defendant's motion for summary judgment is denied; and it is further,
ORDERED, that the attorneys for the parties are directed to appear for a status conference on July 26, 2004 at 9:30 a.m.
This constitutes the decision and Order of the Court.
Dated: Mineola, NY _____________________________
[*6] June 18, 2004 Hon. LEONARD B. AUSTIN, J.S.C.